**Henry P. NICHOLS, Petitioner,**

v.

**DEPARTMENT OF VETERANS AFFAIRS, Respondent.**

No. 93–3114.

United States Court of Appeals, Federal Circuit.

Dec. 7, 1993.

Walter H. Mayo, III, Casner & Edwards, Boston, MA, argued for petitioner.

Matthew S. Bode, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued for respondent. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Sharon Y. Eubanks, Asst. Director.

Before RICH, MAYER, and SCHALL, Circuit Judges.

MAYER, Circuit Judge.

Henry P. Nichols appeals the decision of the Merit Systems Protection Board, No. BN0353920166–I–1, dismissing his claim that the Department of Veterans Affairs improperly denied his right to restoration under the Vietnam Era Veterans' Readjustment Assistance Act, 38 U.S.C. § 4301 (1992). We reverse.

*Background*

Nichols was originally employed in the position of "Chief, Chaplain Services, GM–060–13" at the Brockton/West Roxbury VA Medical Center. On February 28, 1989, he began service on active duty with the United States Air Force. Two weeks before entering the service, Nichols had notified the department in writing that he intended to return to his position at the end of his three year tour of duty.

Following Nichols' departure, the department appointed Aidan J. Walsh to Nichols' former position on a permanent basis. In October 1991, four months prior to his discharge from active duty, Nichols wrote to the department to inform it of his intention to seek restoration. On February 5, 1992, he was contacted by a representative of the department and told about an anticipated vacancy in the position of Chief, Chaplain Service at the Providence, Rhode Island Medical Center. The precise nature of this conversation was the subject of some dispute, but the department conceded that this position was never formally offered to Nichols. For his part, Nichols made it plain that he was not interested in the Providence position because he believed it was not equal to his former one.

On February 28, 1992, Nichols applied for restoration to his former position at the Brockton/West Roxbury Medical Center. Instead, he was offered the position of "Staff Chaplain, GS–060–13." On March 22, 1992, the department assigned him to the position of Staff Chaplain, under the immediate supervision of Walsh. He was instructed to perform the "assigned duties" of a staff chap-lain and was given performance standards for that position.

Nichols appealed to the Merit Systems Protection Board. In its response to his appeal, the department included a description of Nichols' "new" position. Although originally described as a GS–13 position, the department amended the description to place the position in the Performance Management Recognition System, and rated it as GM–13. The position description set out Nichols' principal duties and responsibilities as follows:

> Serves as the Chaplain expert in a Networking Pilot Project for the Eastern New England VAMC's (Brockton/West Roxbury, Boston, Bedford, MA, Providence, RI, Manchester, NH, etc.) for managing Special Pastoral Programs and contacts, the Hospice Program, and the Family Care Homes Program. Performs Chaplain duties for assigned units at either Division of the Brockton/West Roxbury VAMC.

According to the position description, networking duties include reviewing pastoral resources, evaluating needs and devising plans for resource development, and initiating and serving as expert evaluator on special task forces to study potential significant changes in the chaplain program. As the incumbent, Nichols must also develop and maintain contacts with military organizations, veterans' groups and outreach centers, and nursing homes, as well as local, state and federal agencies, media, elected representatives and local organizations. This, so that he may coordinate efforts "to promote, enhance, and provide advice on the pastoral care in the area," and "to review and evaluate innovative programs and maintain state-of-the-art programs." He is to perform these duties under the supervision of the Associate Director of Brockton/West Roxbury Medical Center and his performance is also reviewed by the department's Regional Chaplain Service Manager.

Nichols is also charged with "develop[ing] policy and procedures for the referral of eligible veterans to community-based hospices under Veterans Medicare or Medicaid eli-

gibility," and with developing and maintaining a pastoral program for the department's Family Care Homes program. The position description does not say under whose supervision these duties are performed. Finally, Nichols is responsible for "regular" chaplain duties under the direction of Walsh, the Chief of Chaplain Services at Brockton/West Roxbury.

The board examined the position description in its effort to assess the status of Nichols' new position. It pointed to the wide range of responsibilities and the "management" character of the duties described. The board noted, however, that unlike the position of Chief of Chaplain Services, the new position had no supervisory authority and no staff. It explained that Nichols had discretion in the performance of his duties but also that he was required to report to a number of different supervisors who would evaluate his performance in light of the department's goals for the position and the pilot programs. The board determined that although Nichols had not yet assumed the duties of the new position at the time of the hearing, the success of the projects and thus the status of the position itself would be controlled in large part by his own initiative and performance. The board ruled that the department put a good deal of effort into developing the new position so as to enhance the Chaplain Service and would attempt to provide Nichols the necessary resources to succeed in meeting the department's goals. It concluded that the department had followed "the dictates of sound management" in restoring Nichols to a position equivalent to his old one, and that it need not do more. Nichols appealed.

## Discussion

Chapter 43 of Title 38 of the United States Code, "Veterans' Reemployment Rights," provides employment protection to those citizens called to active duty in the military services. Statutory reemployment rights for veterans have existed since the enactment of the nation's first peacetime draft law, the Selective Training and Service Act of 1940. This law was reenacted in the Military Selective Service Act of 1967, and again in the Vietnam Era Veterans' Readjustment Assistance Act of 1974, now codified at 38 U.S.C. §§ 4301–4307. In pertinent part, this law provides:

> In the case of any person who is inducted into the Armed Forces of the United States ... and who leaves a position (other than a temporary position) in the employ of any employer in order to perform such training and service, and (1) receives a certificate ... [of] satisfactory completion of military service), and (2) makes application for reemployment within ninety days after such person is relieved from such training and service ...
>
> > (A) if such position was in the employ of the United States Government ..., such person shall—
> >
> > > (i) if still qualified to perform the duties of such position ... be restored to such position or to a position of like seniority, status, and pay
>
> . . . . .
>
> unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so.

*Id.* § 4301(a).·

It is undisputed that Nichols satisfied the requirements of the statute by seeking restoration to his former position as Chief of Chaplain Services at Brockton/West Roxbury. The department maintains that although it did not restore him to his former position, it restored him to one of "like seniority, status, and pay." Nichols does not contest that his new position is of like seniority and pay, but challenges the assertion that the position is of like status to his original position within the meaning of the statute. That, then, is the only issue before us.

The historical development of section 4301 shows that Congress intended it to be interpreted broadly in favor of those returning from military service. The original 1940 legislation was intended " 'to offer [veterans] as much protection with respect to reemployment and retention of employment as is within reasonable bounds.' " *Leib v. Georgia–Pacific Corp.*, 925 F.2d 240, 242 (8th Cir. 1991) (quoting 86 Cong.Rec. 10095 (1940) (remarks of Sen. Sheppard)). The preference

of the act is to return the veteran to "such position" as he had previously occupied. Congress intended that the veteran not be penalized by reason of his absence, but retain his position and any accrued benefits, as if he had never left.

 The department first argues that, in this case, Nichols' former position was "unavailable" because it was occupied by another, and thus it was within the department's discretion to place Nichols in an equivalent position. This is incorrect. Nichols' former position is not unavailable because it still exists, even if occupied by another. A returning veteran will not be denied his rightful position because the employer will be forced to displace another employee. "Employers must tailor their workforces to accommodate returning veterans' statutory rights to reemployment. Although such arrangements may produce temporary work dislocations for nonveteran employees, those hardships fall within the contemplation of the Act, which is to be construed liberally to benefit those who 'left private life to serve their country.' *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. [275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946)]." *Goggin v. Lincoln St. Louis*, 702 F.2d 698, 704 (8th Cir.1983). Although occupied by Walsh, Nichols' former position is not unavailable and it is irrelevant that the department would be forced to displace Walsh to restore him. Besides, the department was alerted from the start about Nichols' intention to return and should have been able to anticipate and minimize any disruption that might be caused by his reinstatement.

 Even as the preference of the Act is to give the veteran his old job back, it does give the employer some discretion, "in accordance with the dictates of sound management," to restore the veteran to another position if it is truly of like seniority, status, and pay, which the department says the new position is. *See Bova v. General Mills, Inc.*, 173 F.2d 138, 140 (6th Cir.1949). The focus of this case, "status," is not defined in the

Act, so we give the word its ordinary and common meaning. *See Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) (a "fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.) * We also bear in mind that the Act is to be liberally construed in favor of the returning veteran.

 The board erred in its conclusion that the status of Nichols' new position is like that of his former one. The Chief position is one with clear responsibilities. The incumbent is responsible for supervising and managing a staff of chaplains in their "regular chaplain duties." These regular duties are well defined by precedent and guidelines developed over time. In contrast, Nichols' current position carries a broad variety of new responsibilities that are nebulously defined, mostly because of the unique and untested nature of the position itself. Therefore, while, as Chief, Nichols was in a position of clearly understood responsibility and objectives and was familiar with the criteria by which his success was to be judged, his new position lacks any such predictability, and success, or what will be perceived as success, is difficult if not impossible for him to ascertain.

Perhaps more importantly, Nichols' former position was invested with the necessary authority to fulfill its responsibilities. In that position, he was the boss, and supervised a number of staff chaplains. Now he has no staff at all to assist with the wide range of responsibilities assigned. And he must report to and be supervised by the incumbent of the very same position he formerly held, as well as a number of other supervisors. Although the board was impressed with the wide discretion available to Nichols in handling his new responsibilities, lacking staff and reporting to a multitude of supervisors, it is apparent that he has not been given the necessary authority, indeed any clear authority, to accomplish the goals the department envisions for him. It goes without saying

---

* Two illustrations of the common meaning of the word "status" are: "A relative position in a ranked group or in a social system." American Heritage Dictionary 1191 (2nd ed. 1982); and "The rights, duties, capacities and incapacities which determine a person to a given class." Black's Law Dictionary 1410 (6th ed. 1990).

that when one starts out as the boss, but is placed in a position subordinate to the replacement boss, and other new bosses, there is incontestably a loss of authority, and accordingly a diminished status.

The position Nichols previously occupied had clear responsibilities, management duties, and the necessary authority to carry out those duties; a subsequent position must carry with it like responsibility, duties and authority if it is to be of like status and thus meet the requirements of the statute. By placing Nichols in an untried position and putting the responsibility for its success and continued existence on him without clear guidance and authority to accomplish its goals, the department has failed to satisfy the requirements of the statute. Thus it must restore Nichols to his original position, notwithstanding it must move the incumbent. *See Goggin,* 702 F.2d at 704.

### Conclusion

Accordingly, the decision of the Merit Systems Protection Board is reversed.

*REVERSED.*