# United States Court of Appeals for the Federal Circuit

2006-3263

GARY P. PITTMAN,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

John O. Fronce, Abrams, Gorelick, Friedman & Jacobson, P.C., of New York, New York, argued for petitioner.

Phyllis Jo Baunach, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General, and Kathryn A. Bleecker, Assistant Director. Of counsel on the brief was R. Suzanne Courtney, Attorney, Labor Management Relations, Federal Bureau of Prisons, United States Department of Justice, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2006-3263

GARY P. PITTMAN,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

_____

DECIDED: May 15, 2007

_____

Before MAYER, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and LINN, <u>Circuit Judge</u>.

Opinion for the court filed by <u>Circuit Judge</u> LINN. <u>Circuit Judge</u> MAYER dissents.

LINN, <u>Circuit Judge</u>.

Gary P. Pittman ("Pittman") seeks review of the initial decision of the administrative judge ("AJ") for the Merit Systems Protection Board ("Board"), <u>Pittman v. Dep't of Justice</u>, No. NY-3443-05-0113-I-1 (M.S.P.B. June 28, 2005) ("<u>Initial Decision</u>"), which became the final decision of the Board after it denied Pittman's petition for review, <u>Pittman v. Dep't of Justice</u>, No. NY-3443-05-0113-I-1 (M.S.P.B. Apr. 6, 2006) ("<u>Final Decision</u>"). That decision denied Pittman's request for relief under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") alleging that the Federal Bureau of Prisons ("agency") failed to reemploy him following his military

service and improperly removed him from his position. Because the AJ did not err in finding that Pittman was reemployed following his military service, and because the Board lacked jurisdiction over Pittman's improper removal claims, we affirm in part, vacate in part, and remand.

## I. BACKGROUND

The facts of this case are largely undisputed. Pittman was employed as a Senior Officer Specialist with the agency at the Metropolitan Detention Center in Brooklyn, New York. Pittman also served in the U.S. Marine Corps Reserve and was activated in March 2003 to participate in Operation Iraqi Freedom. Prior to that activation, Pittman's performance at the agency was more than satisfactory and had warranted a number of performance-based awards.

During Operation Iraqi Freedom, Pittman was stationed at the Whitehorse detention facility in Iraq. On September 3, 2004, Pittman was found guilty at a court-martial proceeding of one count of dereliction of duty under the Uniform Code of Military Justice ("UCMJ") Article 92, 10 U.S.C. § 892, and one count of assault under UCMJ Article 128, 10 U.S.C. § 928. A two-page summary of these convictions identified the underlying conduct as the failure to safeguard the physical health, welfare, and treatment of Iraqi prisoners and the unlawful striking of unknown Iraqi prisoners. Pittman was reduced in rank from sergeant to private and sentenced to sixty days of hard labor without confinement. Pittman nevertheless continued to remain a member of the Marine Corps Reserve in good standing and was released from active duty status under honorable circumstances.

The agency received a copy of the two-page summary of Pittman's court-martial convictions in September 2004. On October 25, 2004, Pittman returned to active duty at the agency and worked one shift. After that shift, Pittman was confronted about the conduct underlying the court-martial convictions. At the agency's request, Pittman signed an affidavit acknowledging the convictions but declaring them to be unsupported by evidence. Later that day, the agency placed Pittman on administrative leave and issued a notice proposing indefinite suspension.

On November 14, 2004, the agency rescinded the proposed suspension and issued a notice of proposed removal based on the following charges: (1) two specifications of off-duty[1] misconduct as described in the two counts that resulted in the court marital convictions; and (2) the convictions themselves. Pittman responded to the charges orally and in writing and alleged that the agency's proposed action violated USERRA. He also submitted a supporting affidavit from his commanding officer that described the mitigating circumstances surrounding his conduct in Iraq and a letter of recommendation from the sheriff of Rockland County, New York.

In a letter dated December 20, 2004, the agency sustained the charges and found a nexus between Pittman's off-duty misconduct and his duties as a correctional officer at the agency. The agency also found that removal was warranted to promote the efficiency of the service. The letter informed Pittman that he had a right to grieve his removal under the negotiated grievance procedure or to file an appeal to the Board, but

---

[1] In the context of the agency's letter proposing removal, "off duty" refers to conduct committed outside the scope of Pittman's employ as a correctional officer at the agency.

that only one procedure could be elected. Pittman's removal became effective December 22, 2004.

Pittman grieved the removal under the applicable collective bargaining agreement on January 18, 2005 by a union letter that was sent on his behalf. On January 20, 2005, Pittman filed an appeal with the Board arguing that his removal was improper because it violated USERRA. The government moved to dismiss that appeal for lack of jurisdiction, arguing that Pittman's election to grieve the removal precluded an appeal to the Board of the same matter.

The AJ found that the parties agreed that jurisdiction was lacking over a direct appeal from the removal under 5 U.S.C. § 7513(d) due to Pittman's election to grieve the removal. Initial Decision, slip op. at 5. The AJ noted, however, that the Board might have jurisdiction over Pittman's separate USERRA claims under 38 U.S.C. § 4324(b). Id. The AJ therefore addressed Pittman's claims that the agency violated USERRA by failing to reemploy him following his military service and by removing him on the basis of his military service.

The AJ found that the agency had reemployed Pittman following his military service as reflected by his approved leave status from September 7 through October 24, 2004, his shift of duty on October 25th, and his administrative leave status from October 25 until his removal on December 22, 2004. Id., slip op. at 8-9. With respect to Pittman's improper removal claim, the AJ noted that the government had raised a defense under 38 U.S.C. § 4316(c) that the removal was for cause. Id., slip op. at 7-8. The AJ found that an inquiry into whether there was cause for Pittman's removal would involve the same matter that Pittman had elected to grieve and that it was therefore not

a proper inquiry for the Board. Id., slip op. at 10. The AJ nevertheless assumed that it was properly before the Board and found that there was cause for Pittman's removal. Id., slip op. at 10-12. The AJ also found that Pittman failed to establish that his military service was a motivating or substantial factor in his removal. Id., slip op. at 14-19. Accordingly, the AJ concluded that Pittman did not prove that the agency violated USERRA and denied his request for relief. Id., slip op. at 19-20. The Board denied review, and the decision became final. Final Order, slip op. at 2. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and 38 U.S.C. § 4324(d)(1).

## II. DISCUSSION

Pittman's arguments on appeal identify two separate agency actions that he asserts violated USERRA. First, Pittman argues that the agency failed to reemploy him following his military service, thereby violating 38 U.S.C. § 4312(a). Second, Pittman argues that his removal from the agency was in violation of 38 U.S.C. §§ 4311(a) and 4316(c). On the merits, we must affirm the Board's decision unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); Hayes v. Dep't of the Navy, 727 F.2d 1535, 1537 (Fed. Cir. 1984). Whether the Board has jurisdiction is a question of law that we review de novo. Yates v. Merit Sys. Prot. Bd., 145 F.3d 1480, 1483 (Fed. Cir. 1998).

## A. Failure to Reemploy

Pittman argues that the AJ erred in considering his "failure to reemploy" claim under 38 U.S.C. § 4312(a). Specifically, Pittman argues that the AJ only considered

such a claim under 38 U.S.C. § 4311(a), not under section 4312(a), and that substantial evidence does not support the AJ's finding that the agency reemployed Pittman following his military service.

Pittman's argument that the AJ failed to consider his claim under section 4312(a) is without merit. The AJ specifically noted that Pittman "argued that he was not reemployed with the agency following his military service as contemplated by . . . [section] 4312." Initial Decision, slip op. at 8-9. Furthermore, the AJ's finding that Pittman was reemployed by the agency following his military service is supported by substantial evidence. As the record reflects, Pittman was restored to paid duty status as a correctional officer, effective September 5, 2004. Pittman then requested and received paid approved leave from the agency through October 24, 2004. Pittman returned to work on October 25 and worked one shift before being placed on administrative leave with full pay and benefits. On December 22, 2004, Pittman was officially removed from his position. On this record, we conclude that substantial evidence supports that Pittman was reemployed in his previous position at the agency following his military service.

Pittman also argues that he is entitled to the "full protections of USERRA, including reemployment" because the honorable character of his military service met the requirements of 38 U.S.C. § 4304 and because the government failed to assert defenses under 38 U.S.C. § 4312(d)(1) that allow an employer to deny a claim for reemployment. Because substantial evidence supports that Pittman was reemployed, however, Pittman has received the full protections of his reemployment benefit under

section 4312(a) and his arguments based on sections 4304 and 4312(d) are not relevant.

Accordingly, we hold the AJ did not err in denying Pittman's request for relief under USERRA based on an alleged failure to reemploy him after completion of his military service.

## B. Improper Removal

Pittman argues that the AJ erred in addressing his claim for improper removal under 38 U.S.C. §§ 4311(a) and 4316(c). Specifically, Pittman argues that "for cause" in section 4316(c) relates only to post-reemployment activity and not pre-reemployment activity, that "cause" in that section means "just and sufficient cause" as defined by the collective bargaining agreement, and that the agency's evidence was insufficient to demonstrate that cause existed or that removal was the proper penalty. With respect to section 4311(a), Pittman argues that the AJ failed to consider that his conduct during military service, as well as his military status, may serve as a predicate for discrimination under that section, and that substantial evidence does not support the AJ's finding that Pittman failed to prove that military service was a motivating or substantial factor in his removal.

The government counters that the Board lacks jurisdiction to consider whether the agency had "cause" for Pittman's removal because 5 U.S.C. § 7121(e) precludes the Board from addressing matters that an employee has elected to resolve through the negotiated grievance procedure. The government also counters that nothing in USERRA prevents an agency from looking at pre-reemployment activities for "cause," that substantial evidence supports the AJ's findings that valid cause existed for

Pittman's removal, and that Pittman failed to prove he was terminated because of his military service.

We begin by examining the Board's jurisdiction over Pittman's improper removal claims under sections 4311(a) and 4316(c). Section 7121 of Title 5 governs the grievance procedures for governmental employees that are members of a collective bargaining agreement. That section provides, in relevant part, that:

> Matters covered under sections 4303 and 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both. <u>Similar matters which arise under other personnel systems</u> applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised either under the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure, but not both.

5 U.S.C. § 7121(e) (emphasis added). Here, because Pittman elected to grieve his removal—an action covered under 5 U.S.C. § 7512—it is undisputed that his removal cannot be appealed under 5 U.S.C. § 7701. The AJ, however, found jurisdiction over Pittman's USERRA claims under 38 U.S.C. § 4324(b), a provision of the personnel system protecting veterans' benefits.[2] We therefore must consider whether the matter raised in Pittman's improper removal claims under 38 U.S.C. §§ 4311(a) and 4316(c) is similar to the matter raised in Pittman's grievance; if so, the Board lacks jurisdiction over the appeal of those claims.

Section 4311(a) prohibits discrimination on the basis of military service and states:

---

[2] See S. Rep. No. 95-969 (1978) (discussing "matters similar to those listed above which may arise under other personnel systems, such as those provided in title 38, United States Code [relating to veterans' benefits]").

2006-3263                                8

A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a). As we held in Sheehan v. Department of the Navy, section 4311(a) requires an employee making a claim under that provision to "bear the initial burden of showing by a preponderance of the evidence that the employee's military service was 'a substantial or motivating factor' in the adverse employment action." 240 F.3d 1009, 1013 (Fed. Cir. 2001) (citing NLRB v. Transp. Mgmt. Corp., 462 U.S. 393, 400-01 (1983)). "If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." Id.; see also 38 U.S.C. § 4311(c)(1) ("An employer shall be considered to have engaged in actions prohibited under subsection (a) . . . unless the employer can prove that the action would have been taken in the absence of [military status]."). Therefore, the inquiry presented here under section 4311 is, at bottom, a question of cause.

Section 4316(c) is a specific benefit for employees that are absent due to military service and provides that "[a] person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause" for periods of either a year or half of a year depending on the length of the employee's military service. 38 U.S.C. § 4316(c) (emphasis added). Much like section 4311, the benefit provided by section 4316(c) is subject to an employer's ability to show that valid cause exists for discharging the employee.

Pittman's election to grieve his removal under the applicable collective bargaining agreement challenged that he was "terminated without just cause for Off-Duty Misconduct and Conviction." The collective bargaining agreement provides that adverse actions may only be taken "for just and sufficient cause and to promote the efficiency of the service." As Pittman's election makes clear, the underlying agency action that Pittman raised under the negotiated grievance procedure—his termination—is the same underlying agency action that is challenged in Pittman's improper removal claims under sections 4311(a) and 4316(c). That is further demonstrated by the inquiries presented by Pittman's improper removal claims, which are similar to, and overlap with, the inquiry facing the arbitrator—whether Pittman's termination was for cause. We therefore conclude that Pittman's USERRA claims for improper removal under sections 4311(a) and 4316(c) are "similar matters which arise under other personnel systems" that he had previously elected to raise under the negotiated grievance procedure. 5 U.S.C. § 7121(e). Because of that election, Pittman is precluded by 5 U.S.C. § 7121(e) from bringing those claims before the Board under 38 U.S.C. § 4324(b). Accordingly, the Board lacked jurisdiction to consider Pittman's improper removal claims, and the AJ's denial of those claims on the merits was in error.

Having concluded that the Board lacked jurisdiction over Pittman's improper removal claims, we need not—and do not—address the question of whether an employee can be removed for cause under USERRA predicated on the employee's conduct during military service that results in an adjudication by a military tribunal but does not disqualify the employee from a separation under honorable conditions.

## III. CONCLUSION

Because the AJ did not err in finding that the agency reemployed Pittman following the completion of his military service, we affirm the Board's denial of Pittman's "failure to reemploy" claim under USERRA. Because the Board under 5 U.S.C. § 7121(e) lacked jurisdiction over Pittman's improper removal claims, we vacate the Board's denial of Pittman's improper removal claims under USERRA and remand with instructions to dismiss those claims.

### AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

### COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

2006-3263

GARY P. PITTMAN,

Petitioner,

v.

DEPARTMENT OF JUSTICE,

Respondent.

MAYER, <u>Circuit Judge</u>, dissenting.

Shortly after the events of September 11, 2001, twelve employees of the Federal Bureau of Prisons' Metropolitan Detention Center ("MDC") in New York assaulted several detainees suspected of terrorism ties who were in their custody. The warden took no action against them for years. Only in response to a Department of Justice Inspector General's investigation did the warden belatedly act, and then only two lost their positions.

Shortly after 9/11, Gary Pittman, an exemplary, award-winning employee of the MDC and a Marine Corps reservist, was called up for active duty in Iraq. While in the field under dangerous, isolated, primitive circumstances, he was accused of striking suspected enemy detainees. He was punished by court-martial but was retained on duty, and he ultimately received an honorable discharge from active duty and remained in the Reserves. In direct contravention of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), the warden refused to return him to his

civilian job because of his military service. Instead, he chose to punish him a second time, notwithstanding his reluctance and refusal to punish similar – if not more egregious – conduct in his own facility. It is ironic that the Department of Justice blatantly distorts USERRA to support this perversion of Congress' clarion mandate, in time of war no less. It is beyond ironic that this court lets them get away with it. I dissent.

Congress has long recognized that reserve military personnel may be disadvantaged in their civilian employment, particularly when military service requires an absence from their jobs. Accordingly, it has seen fit since 1940 to provide them with reemployment protections. See Nichols v. Dep't of Veterans Affairs, 11 F.3d 160, 162 (Fed. Cir. 1993) (chronicling history of military reemployment statutes). Even earlier, however, Congress required the federal government to reemploy service members after a military absence. Pub. L. No. 6-642, 39 Stat. 619, 624 (1916) (providing that "all officers and enlisted men of the National Guard and of the Medical Reserve Corps of the Army who are Government employees and who respond to the call of the President for service shall, at the expiration of the military service to which they are called, be restored to the positions occupied by them at the time of the call"). Although the reemployment statutes have evolved and expanded through the years, the underlying purpose has remained consistent: A service member is "not to be disadvantaged by serving his country." McKinney v. Mo.-Kan.-Tex. R.R. Co., 357 U.S. 265, 270 (1958); see also 38 U.S.C. § 4301(a); Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284 (1946) ("He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job.").

The most recent enactment of such protections is USERRA, Pub. L. No. 103-353, 108 Stat. 3149 (codified as amended at 38 U.S.C. §§ 4301-4333). USERRA applies to the federal government as well as private employers, and Congress expressly expected that the federal government would serve as a "model employer." 38 U.S.C. §§ 4301(b), 4314.[1] In addition to its other protections, USERRA continues to provide an expansive reemployment right.[2] When "absence from a position of employment is necessitated by reason of service in the uniformed services," civilian employers must promptly provide reemployment upon completion of the service.[3] Id. §§ 4312-4213. However, reemployment is not limited to returning a service member to gainful employment. It requires reemployment in the position that would have been attained absent the military service, "or a position of like seniority, status and pay, the duties of which the person is qualified to perform." Id. § 4313(a)(2)(A); 20 C.F.R. § 1002.193 ("The reemployment position includes the seniority, status, and rate of pay that an employee would ordinarily have attained in that position given his or her job history, including prospects for future earnings and advancement."). This is in keeping with USERRA's predecessor statute, under which we recognized that "a subsequent position must carry with it like responsibility, duties and authority if it is to be of like status."

---

[1] The President has recognized the importance of the federal government's adherence to USERRA. Memorandum for the Heads of Executive Departments and Agencies, 39 Weekly Comp. Pres. Doc. 47 (Nov. 14, 2003) ("The Federal Government will continue to be the model for employer support to the Guard and Reserve. We are the guarantors of the rights of returning service members under [USERRA].").

[2] USERRA also provides anti-discrimination protection, 38 U.S.C. § 4311, and requires cause to remove a person for certain periods after reemployment, id. § 4316. It also protects anyone who assists in enforcing its provisions from employer retaliation. Id. § 4311(b).

[3] USERRA does provide exceptions to the reemployment right, none of which are at issue here. 38 U.S.C. § 4312(d); see also infra note 6.

<u>Nichols</u>, 11 F.3d at 164. This interpretation is wholly consistent with, if not mandated by, USERRA's statutorily expressed purpose of eliminating or reducing any employment disadvantages resulting from military service.[4]

Employers bear the burden of establishing compliance with the reemployment obligation. Here, the government, as Pittman's employer, has failed to establish that he was properly reemployed, and it certainly has obliterated any pretense that it is a model employer.

There is no merit to the government's contention that Pittman was not entitled to reemployment due to his conduct while on military duty. Congress addressed the relationship between a person's military conduct and USERRA rights by making those rights terminable only upon a separation from service under less than honorable conditions. 38 U.S.C. § 4304.[5] In so doing, it made the military departments the sole

---

[4] Congress statutorily stated the purposes of USERRA as:

   (1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
   (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
   (3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301(a).

[5] The phrase "less than honorable conditions" is used merely for convenience. Section 4304 specifically provides:

   A person's entitlement to the benefits of this chapter by reason of the service of such person in one of the uniformed services terminates upon the occurrence of any of the following events:

judges of a person's military conduct, and it is for neither the employer nor this court to reevaluate military service that has already been deemed honorable.  See id.; see also id. § 4311 (providing that reemployment may not be denied based on the performance of military service); 20 C.F.R. § 1002.136.  Congress further confirmed this by specifically providing grounds on which an employer may deny reemployment rights, none of which are based on military conduct or present here.[6]  See Venatas, Inc. v.

---

    (1) A separation of such person from such uniformed service with a dishonorable or bad conduct discharge.

    (2) A separation of such person from such uniformed service under other than honorable conditions, as characterized pursuant to regulations prescribed by the Secretary concerned.

    (3) A dismissal of such person permitted under section 1161(a) of title 10.

    (4) A dropping of such person from the rolls pursuant to section 1161(b) of title 10.

[6]   The statutory exceptions are set forth in 38 U.S.C. § 4312(d), which provides:

(d) (1) An employer is not required to reemploy a person under this chapter if—

    (A) the employer's circumstances have so changed as to make such reemployment impossible or unreasonable;

    (B) in the case of a person entitled to reemployment under subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313, such employment would impose an undue hardship on the employer; or

    (C) the employment from which the person leaves to serve in the uniformed services is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period.

    (2) In any proceeding involving an issue of whether—

    (A) any reemployment referred to in paragraph (1) is impossible or unreasonable because of a change in an employer's circumstances,

<u>United States</u>, 381 F.3d 1156, 1161 (Fed. Cir. 2004) ("Where Congress includes certain exceptions in a statute, the maxim <u>expressio</u> <u>unius</u> <u>est</u> <u>exclusio</u> <u>alterius</u> presumes that those are the only exceptions Congress intended."). Because Pittman was entitled to be reemployed but was not, the board should have ordered the agency to comply with USERRA, and reinstate him with payment for lost wages and benefits. 38 U.S.C. § 4324(c)(2).

The government's quibble that returning Pittman to paid duty status with his previous title satisfies the reemployment obligation necessarily fails. It is insufficient to merely return him to the payroll. Instead, he must be placed in the correct job, considering seniority, status, and pay rate. <u>See</u> 20 C.F.R. § 1002.194 (noting factors relevant in determining the like status of a reemployment position, including opportunities for advancement, working conditions, job location, shift assignment, rank, and responsibility); <u>see also</u> <u>Nichols</u>, 11 F.3d at 164 (concluding that an employee was not properly reemployed under a predecessor statute due to the diminished responsibility, duties, and authority of the reemployment position); <u>Duarte v. Agilent Techs., Inc.</u>, 366 F. Supp. 2d 1039, 1045-46 (D. Colo. 2005) (finding a USERRA violation due to the veteran's diminished duties in his reemployment position).

---

      (B) any accommodation, training, or effort referred to in subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313 would impose an undue hardship on the employer, or

      (C) the employment referred to in paragraph (1)(C) is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period,

the employer shall have the burden of proving the impossibility or unreasonableness, undue hardship, or the brief or nonrecurrent nature of the employment without a reasonable expectation of continuing indefinitely or for a significant period.

Accordingly, it borders on absurd for the government to contend that Pittman was fully restored to the position of a correctional officer, with its status and duties, when his "duty station" was changed from the prison to his home. For the same reasons, Pittman's time spent on military and administrative leave fail to satisfy the agency's reemployment duty.

The fact that he worked a single shift, after which he was indefinitely suspended and removed, also is insufficient to constitute proper reemployment under USERRA. His supervisor testified that the agency determined prior to his shift that he would not be allowed to return to work. He testified that "Pittman should not have worked that shift" and that he had "put out instruction that upon [Pittman's] return we should have him meet with [an agency person] and that he should not enter the institution." The testimony makes clear that the agency made a personnel decision to prohibit him from performing any actual job duties, and that it was only by accident that he completed a shift. This does not satisfy the agency's reemployment obligation.