MAYER, Circuit Judge,
dissenting.
Shortly after the events of September 11, 2001, twelve employees of the Federal Bureau of Prisons’ Metropolitan Detention Center (“MDC”) in New York assaulted several detainees suspected of terrorism ties who were in their custody. The warden took no action against them for years. Only in response to a Department of Justice Inspector General’s investigation did the warden belatedly act, and then only two lost their positions.
Shortly after 9/11, Gary Pittman, an exemplary, award-winning employee of the MDC and a Marine Corps reservist, was called up for active duty in Iraq. While in the field under dangerous, isolated, primitive circumstances, he was accused of striking suspected enemy detainees. He was punished by court-martial but was *1283 retained on duty, and he ultimately received an honorable discharge from active duty and remained in the Reserves. In direct contravention of the Uniformed Services Employment and Reemployment Rights Act of 1994 (“USERRA”), the warden refused to return him to his civilian job because of his military service. Instead, he chose to punish him a second time, notwithstanding his reluctance and refusal to punish similar — if not more egregious — conduct in his own facility. It is ironic that the Department of Justice blatantly distorts USERRA to support this perversion of Congress’ clarion mandate, in time of war no less. It is beyond ironic that this court lets them get away with it. I dissent.
Congress has long recognized that reserve military personnel may be disadvantaged in their civilian employment, particularly when military service requires an absence from their jobs. Accordingly, it has seen fit since 1940 to provide them with reemployment protections. See Nichols v. Dep’t of Veterans Affairs, 11 F.3d 160, 162 (Fed.Cir.1993) (chronicling history of military reemployment statutes). Even earlier, however, Congress required the federal government to reemploy service members after a military absence. Pub.L. No. 6-642, 39 Stat. 619, 624 (1916) (providing that “all officers and enlisted men of the National Guard and of the Medical Reserve Corps of the Army who are Government employees and who respond to the call of the President for service shall, at the expiration of the military service to which they are called, be restored to the positions occupied by them at the time of the call”). Although the reemployment statutes have evolved and expanded through the years, the underlying purpose has remained consistent: A service member is “not to be disadvantaged by serving his country.” McKinney v. Mo.-Kan.-Tex. R.R. Co., 357 U.S. 265, 270, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958); see also 38 U.S.C. § 4301(a); Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946) (“He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job.”).
The most recent enactment of such protections is USERRA, Pub.L. No. 103-353, 108 Stat. 3149 (codified as amended at 38 U.S.C. §§ 4301-4333). USERRA applies to the federal government as well as private employers, and Congress expressly expected that the federal government would serve as a “model employer.” 38 U.S.C. §§ 4301(b), 4314.[1] In addition to its other protections, USERRA continues to provide an expansive reemployment right.[2] When “absence from a position of employment is necessitated by reason of service in the uniformed services,” civilian employers must promptly provide reemployment upon completion of the service.[3] Id. §§ 4312-4213. However, reemployment is not limited to returning a service *1284 member to gainful employment. It requires reemployment in the position that would have been attained absent the military service, “or a position of like seniority, status and pay, the duties of which the person is qualified to perform.” Id. § 4313(a)(2)(A); 20 C.F.R. § 1002.193 (“The reemployment position includes the seniority, status, and rate of pay that an employee would ordinarily have attained in that position given his or her job history, including prospects for future earnings and advancement.”). This is in keeping with USERRA’s predecessor statute, under which we recognized that “a subsequent position must carry with it like responsibility, duties and authority if it is to be of like status.” Nichols, 11 F.3d at 164. This interpretation is wholly consistent with, if not mandated by, USERRA’s statutorily expressed purpose of eliminating or reducing any employment disadvantages resulting from military service.[4]
Employers bear the burden of establishing compliance with the reemployment obligation. Here, the government, as Pittman’s employer, has failed to establish that he was properly reemployed, and it certainly has obliterated any pretense that it is a model employer.
There is no merit to the government’s contention that Pittman was not entitled to reemployment due to his conduct while on military duty. Congress addressed the relationship between a person’s military conduct and USERRA rights by making those rights terminable only upon a separation from service under less than honorable conditions. 38 U.S.C. § 4304.[5] In so doing, it made the military departments the sole judges of a person’s military conduct, and it is for neither the employer nor this court to reevaluate military service that has already been deemed honorable. See id.; see also Id. § 4311 (providing that reemployment may not be denied based on the performance of military service); 20 C.F.R. § 1002.136. Congress further confirmed this by specifically providing grounds on which an employer may deny reemployment rights, none of which are based on military conduct or present here.[6] See Ventas, Inc. v. United States, 381 F.3d 1156, 1161 (Fed.Cir.2004) (“Where Con *1285 gress includes certain exceptions in a statute, the maxim expressio unius est exclu-sio alterius presumes that those are the only exceptions Congress intended.”). Because Pittman was entitled to be reemployed but was not, the board should have ordered the agency to comply with USER-RA, and reinstate him with payment for lost wages and benefits. 38 U.S.C. § 4324(c)(2).
The government’s quibble that returning Pittman to paid duty status with his previous title satisfies the reemployment obligation necessarily fails. It is insufficient to merely return him to the payroll. Instead, he must be placed in the correct job, considering seniority, status, and pay rate. See 20 C.F.R. § 1002.194 (noting factors relevant in determining the like status of a reemployment position, including opportunities for advancement, working conditions, job location, shift assignment, rank, and responsibility); see also Nichols, 11 F.3d at 164 (concluding that an employee was not properly reemployed under a predecessor statute due to the diminished responsibility, duties, and authority of the reemployment position); Duarte v. Agilent Techs., Inc., 366 F.Supp.2d 1039, 1045-46 (D.Colo.2005) (finding a USERRA violation due to the veteran’s diminished duties in his reemployment position). Accordingly, it borders on absurd for the government to contend that Pittman was fully restored to the position of a correctional officer, with its status and duties, when his “duty station” was changed from the prison to his home. For the same reasons, Pittman’s time spent on military and administrative leave fail to satisfy the agency’s reemployment duty.
The fact that he worked a single shift, after which he was indefinitely suspended and removed, also is insufficient to constitute proper reemployment under USER-RA. His supervisor testified that the agency determined prior to his shift that he would not be allowed to return to work. He testified that “Pittman should not have worked that shift” and that he had “put out instruction that upon [Pittman’s] return we should have him meet with [an agency person] and that he should not enter the institution.” The testimony makes clear that the agency made a personnel decision to prohibit him from performing any actual job duties, and that it was only by accident that he completed a shift. This does not satisfy the agency’s reemployment obligation.

. The President has recognized the importance of the federal government’s adherence to USERRA. Memorandum for the Heads of Executive Departments and Agencies, 39 Weekly Comp. Pres. Doc. 47 (Nov. 14, 2003) (“The Federal Government will continue to be the model for employer support to the Guard and Reserve. We are the guarantors of the rights of returning service members under [USERRA].”).

. USERRA also provides anti-discrimination protection, 38 U.S.C. § 4311, and requires cause to remove a person for certain periods after reemployment, Id. § 4316. It also protects anyone who assists in enforcing its provisions from employer retaliation. Id. § 4311(b).

.USERRA does provide exceptions to the reemployment right, none of which are at issue here. 38 U.S.C. § 4312(d); see also infra note 6.

. Congress statutorily stated the purposes of USERRA as:
(1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
(2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
(3) to prohibit discrimination against persons because of their service in the uniformed services.
38 U.S.C. § 4301(a).

. The phrase "less than honorable conditions” is used merely for convenience. Section 4304 specifically provides:
A person's entitlement to the benefits of this chapter by reason of the service of such person in one of the uniformed services terminates upon the occurrence of any of the following events:
(1) A separation of such person from such uniformed service with a dishonorable or bad conduct discharge.
(2) A separation of such person from such uniformed service under other than honorable conditions, as characterized pursuant to regulations prescribed by the Secretary concerned.
(3) A dismissal of such person permitted under section 1161(a) of title 10.
(4) A dropping of such person from the rolls pursuant to section 1161(b) of title 10.

.The statutory exceptions are set forth in 38 U.S.C. § 4312(d), which provides:
(d) (1) An employer is not required to reemploy a person under this chapter if—
(A) the employer’s circumstances have so changed as to make such reemployment impossible or unreasonable;
*1285 (B) in the case of a person entitled to reemployment under subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313, such employment would impose an undue hardship on the employer; or
(C) the employment from which the person leaves to serve in the uniformed services is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period.
(2) In any proceeding involving an issue of whether—
(A)any reemployment referred to in paragraph (1) is impossible or unreasonable because of a change in an employer’s circumstances, (B) any accommodation, training, or effort referred to in subsection (a)(3), (a)(4), or (b)(2)(B) of section 4313 would impose an undue hardship on the employer, or
(C) the employment referred to in paragraph (1)(C) is for a brief, nonrecurrent period and there is no reasonable expectation that such employment will continue indefinitely or for a significant period,
the employer shall have the burden of proving the impossibility or unreasonableness, undue hardship, or the brief or nonrecur-rent nature of the employment without a reasonable expectation of continuing indefinitely or for a significant period.