# United States Court of Appeals for the Federal Circuit

2007-3238

ANDY L. SMITH,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Thomas E. Vanderbloemen, Gallivan, White & Boyd, P.A., of Greenville, South Carolina, argued for petitioner.

Tara J. Kilfoyle, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2007-3238

ANDY L. SMITH,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Petition for review of the Merit Systems Protection Board in
DA3443070139-I-1

_____

DECIDED:  September 4, 2008

_____

Before LOURIE, BRYSON, and PROST, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

Andy L. Smith appeals from a decision of the Merit Systems Protection Board denying his request for compensation under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-33.  He sought an award of compensation for working irregular hours in a part-time position upon his return from military service when he should have been placed in a full-time position with regular hours.  The Board held that he was not entitled to compensation because he would not have had an irregular work schedule if he had been timely appointed to the full-time position to which he was entitled and therefore would not have earned premium pay.  We agree with Mr. Smith, however, that he is entitled to compensation because he was denied a benefit of the full-time position, i.e., a regular schedule of work.  We

therefore vacate the Board's decision and remand for a determination of the amount of compensation owed to Mr. Smith.

I

Mr. Smith was a member of the U.S. Army Reserve who was called to full-time military duty on October 22, 2001. He left his position with the United States Postal Service and entered on active duty on December 12, 2001. At that time, Mr. Smith was working as a flexible mail processing clerk at the East Texas Processing and Distribution Center in Tyler, Texas. During his absence for military duty, Mr. Smith bid on a full-time position as a custodian. Upon his return from military service, Mr. Smith was not given the custodian position, but was placed in a part-time clerk's position. He served in that position from January 8, 2005, until August 20, 2005. At that time, pursuant to a successful grievance filed by his union, Mr. Smith was transferred to a full-time custodian position, working the Tour 2 shift (6:30 a.m. to 3:00 p.m.).

Mr. Smith subsequently filed an administrative complaint with the Merit Systems Protection Board, which has jurisdiction over complaints alleging USERRA violations by federal executive agencies. See 38 U.S.C. § 4324. In his complaint and in the subsequent proceedings before the Board, Mr. Smith argued that, based on the application he submitted while he was in the military, he was entitled to return to the full-time custodian position immediately upon his return from military service.

In the course of the litigation, the Postal Service conceded that Mr. Smith should have been rehired directly into the custodian position as a full-time employee with higher pay and regular hours. Accordingly, the Postal Service gave him seniority rights retroactive to the date of his application in December 2003 and back pay representing

the difference between the pay of the full-time and part-time positions, for a total of $1,465.05. The Postal Service also reimbursed him for the health insurance premiums it conceded it should not have charged him during his military absence, which amounted to $1,453.37.

In view of those concessions by the Postal Service, the only remaining issue before the Board was Mr. Smith's contention that he was entitled to out-of-schedule premium pay for the time he had worked irregular hours as a part-time employee following his return from the military. During the seven and one-half months between the time of his return and the time he was placed into the full-time custodian position, Mr. Smith was working in a part-time position with a schedule that alternated between the Tour 1 shift (11:00 p.m. to 6:30 a.m.) and the Tour 3 shift (4:30 p.m. to 1:00 a.m.). During that period, Mr. Smith argues, he should have been assigned to Tour 2, which would have been the case if he had been put in the custodian position immediately upon his return from military service. According to Mr. Smith, compensation for working irregular tours was required under the Postal Service's Employee Labor Relations Manual and was necessary to redress the inconvenience he suffered by having to work the erratic hours and multiple shifts that he would not have worked if he had been reemployed in the proper position at the outset.

The Board rejected his argument. It concluded that he was not entitled to out-of-schedule premium pay while he was employed as a part-time clerk, because only full-time employees were eligible for out-of-schedule premium pay. The Board also determined that because no full-time custodians in the East Texas Processing and Distribution Center received out-of-schedule premium pay for the period during which

Mr. Smith was improperly assigned to part-time work as a clerk, the Postal Service's retroactive compensation did not need to be adjusted to include an amount representing out-of-schedule premium pay. Mr. Smith now petitions for review by this court.

II

USERRA represents Congress's most recent effort to create a comprehensive statutory scheme to provide civilian reemployment rights for those who serve in the armed forces in order "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." 38 U.S.C. 4301(a). The Act also aims "to minimize the disruption to the lives of persons performing service," and "to prohibit discrimination against persons because of their service." Id. USERRA was enacted specifically to "restructure, clarify, and improve" the prior reemployment benefits statutes. S. Rep. No. 102-203, at 27 (1991). While Congress intended to expand and clarify the prior statutes, the legislative history stated that the "extensive body of case law" under the predecessor statutes "would remain in full force and effect to the extent consistent" with USERRA. Id. at 31.

Under USERRA, Mr. Smith was entitled to be reemployed in a position of "like seniority, status and pay." 38 U.S.C. § 4313(a)(2)(A). Implementing regulations define "status" to include "opportunities for advancement, general working conditions, job location, shift assignment, rank responsibility, and geographical location." 20 C.F.R. § 1002.193 (emphasis added). Case law establishes that "shift assignment" and regular hours are benefits of employment. See Hill v. Michelin N. Am., Inc., 252 F.3d 307, 313 (4th Cir. 2001) ("we believe that the Q-Laboratory's more regular schedule is properly

viewed as an advantage of the job under USERRA's definition of 'benefit of employment.'"); Allen v. United States Postal Serv., 142 F.3d 1444, 1447 (Fed. Cir. 1998) (stating that "daytime hours," which "most workers consider desirable" are an "incident or advantage of employment."); Carlson v. N.H. Dep't of Safety, 609 F.2d 1024, 1027 (1st Cir. 1979) ("We cannot say that the transfer, due to plaintiff's reserve training, from a basically 8 to 5 weekday job to one with weekend work and shifts which may fall during any hour of the day or night is not a denial of an incident or advantage of employment"). In the event that an agency does not comply with its obligations under USERRA, the Board is required "to compensate such person for any loss of wages or benefits suffered by such person by reason of such lack of compliance." 38 U.S.C. § 4324(c)(2).

The Postal Service contends that the Board correctly held that Mr. Smith would be entitled to compensation only if other employees in the East Texas Processing and Distribution Center who held the full-time custodian position worked irregular shifts during the period that Mr. Smith was in his part-time position. Because the evidence indicated that none of those employees worked irregular shifts during that time, and thus none earned premium pay for working irregular shifts, the Postal Service argues that Mr. Smith is likewise not entitled to any award of premium pay.

That argument misses the point. The employees in the full-time custodian positions enjoyed a benefit that Mr. Smith did not—a regular tour of duty. With respect to that benefit, Mr. Smith was worse off than the employees in the full-time custodian positions. The applicable regulations, binding on the Postal Service, define "status" for USERRA purposes to include "shift assignment," indicating that a favorable shift

assignment is a benefit, and section 4324(c)(2) of USERRA directs that loss of benefits must be compensated.

Similar compensation has been provided under other federal labor laws providing relief for discrimination. Gaffney v. Riverboat Servs. of Ind., Inc., 451 F.3d 424, 462 (7th Cir. 2006) (where employee earned more money by working longer hours at a lower rate at his post-termination job, the backpay award under 46 U.S.C. § 2114 was properly adjusted to account for the number of hours he would have worked in his original job); Gaworski v. ITT Commercial Fin. Corp., 17 F.3d 1104, 1111 (8th Cir. 1994) (compensation awarded for "job search" expenses under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.); F.E. Hazard, Ltd. v. NLRB, 917 F.2d 736, 738 (2d Cir. 1990) (compensation awarded for ordinary and necessary business expenses incurred during period of interim earnings under National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), (4)). Similar compensation has also been awarded under the predecessor compensation statute to USERRA, which used virtually identical language. Eidukonis v. Se. Pa. Transp. Auth., 757 F. Supp. 634, 640 (E.D. Pa. 1991), aff'd, 944 F.2d 896 (3d Cir. 1991) (table) (compensation awarded for out-of-pocket medical expenses under 38 U.S.C. § 2022).

The fact that none of the custodians in the East Texas Processing and Distribution Center during the period in question received out-of-schedule premium pay is irrelevant. Unlike the full-time custodians, Mr. Smith worked irregular shifts without compensation and thus did not enjoy the benefit that they enjoyed (and that he would have enjoyed if he had been placed directly into the custodian position). The deprivation of that benefit is compensable as a loss of a "shift assignment" benefit.

What remains unresolved is how to calculate the value of the lost benefit. Mr. Smith relies on section 434.612(a) of the Postal Service's Employee Labor Relations Manual, which provides that eligible workers are entitled to premium pay if they work hours outside of their normal shift, provided they have been given notice of the schedule change at least a week in advance.[1] According to Mr. Smith, he should receive premium pay for any time worked outside of his current Tour 2 shift. Because Mr. Smith's schedule rotated between Tours 1 and 3, his proposed calculation would mean that he would receive premium pay for all the hours he worked in the temporary clerk position. Mr. Smith's analysis, however, fails to account for the fact that, as the Postal Service notes, Mr. Smith was only entitled to work a regular schedule; he was not entitled to work any particular regular schedule. Because it appears Mr. Smith worked two separate shifts on a rotating basis as a part-time employee, it would seem that only one of those shifts would be considered "out-of-schedule." As for the valuation of the time that Mr. Smith worked out of schedule, the out-of-schedule premium pay is the amount that the Postal Service pays to persons who are required to work out-of-schedule shifts. For that reason, treating one of his shifts as his primary, normal shift and the other as the out-of-schedule shift would appear to be a reasonable basis for valuing the benefit that Mr. Smith lost. However, there may be other factors bearing on

---

[1] In passing, the government notes that full-time employees are required to work irregular shifts only if they are given timely notice by management of a temporary schedule change and argues that because Mr. Smith was not given such notice, he is not entitled to premium pay for out-of-schedule work. Mr. Smith, however, is not directly seeking pay for his out-of-schedule work, but is seeking compensation for a lost benefit. The "notice" requirement serves as an additional benefit to full-time employees by ensuring that they will not be required to work different schedules unless given advance

the proper analysis of the amount owed to Mr. Smith, and we leave it to the Board to determine in the first instance the proper compensation for the loss of the benefit to which he was entitled.

<u>VACATED and REMANDED</u>.

notice of the requirement. Thus, the "notice" provision does not in any way undermine Mr. Smith's argument that he was denied a benefit to which he was legally entitled.