# United States Court of Appeals
# for the Federal Circuit

---

**DARRELL T. CRAWFORD,**
*Petitioner,*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent.*

---

2012-3037

---

Petition for review of the Merit Systems Protection Board in No. NY4324090336-X-1.

---

Decided: June 11, 2013

---

MATTHEW D. ESTES, Tully Rinckey PLLC, of Arlington, Virginia, argued for petitioner. On the brief was STEVEN L. HERRICK, of Washington, DC.

HILLARY A. STERN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director.

---

Before RADER, *Chief Judge,* DYK, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Darrel T. Crawford appeals from a final decision of the Merit Systems Protection Board ("the Board") dismissing as moot his allegation that the Department of the Army ("the Agency") failed to comply with an order for corrective action. The Board determined that the position to which Mr. Crawford was assigned by the Agency in response to the corrective action complied with § 4313(a)(2) of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") because it was of "like status" to the position he held prior to his active, uniformed service. We do not find that the Board acted arbitrarily or contrary to law in making this determination. We therefore affirm.

BACKGROUND

Mr. Crawford began his employment with the Agency in 1986. With credit for military service, the inception date of his federal service is 1979. During this time, he has occupied several positions with the Agency. In April 2006, at the time Mr. Crawford was called to perform uniformed service, he was an Information Technology (IT) Specialist, GS-2210-11, in the Agency's Army Corps of Engineers New York District Information Management Office (Mr. Crawford's "old position"). Mr. Crawford's uniformed service lasted until about April 2008.

In June 2006, the Agency transferred many of its information management/information technology (IM/IT) functions to Lockheed Martin. This transfer was authorized by the Office Management and Budget Circular A-76 program. As part of the transfer of IM/IT functions, the Agency abolished Mr. Crawford's old position and transferred those duties to Lockheed Martin employees, who are not federal employees.

At the same time the Agency transferred certain IM/IT functions to Lockheed Martin, it also formed a new organization called the Army Corps of Engineers-Information Technology (ACE-IT). The mission of ACE-IT is to provide IM/IT services to all agency offices in the United States. In April 2007, recruitment began for the new positions created within ACE-IT. Some Agency employees affected by the A-76 program were hired by ACE-IT through a competitive selection process. Those employees that were not hired by ACE-IT were transferred, with their consent, to non-IM/IT positions in other offices within the Corps of Engineers' New York District.

When Mr. Crawford completed uniformed service, the Agency briefly returned him to an IT Specialist position. But in June 2008, the Agency reassigned him to the position of Program Support Specialist, GS-0301-11. Mr. Crawford challenged this reassignment with the Board. He specifically alleged that the Program Support Specialist position violated 5 C.F.R. § 353.209(a)[1] because it was not of "like status" to his old position as an IT Specialist. As such, the Agency violated the reemployment protec-

---

[1]　5 C.F.R. § 353.209(a) reads as follows:

During uniformed service. An employee may not be demoted or separated (other than military separation) while performing duty with the uniformed services except for cause. (Reduction in force is not considered "for cause" under this subpart.) He or she is not a "competing employee" under § 351.404 of this chapter. *If the employee's position is abolished during such absence, the agency must reassign the employee to another position of like status, and pay*.

5 C.F.R. § 353.209(a) (emphasis added).

tions provided to those in uniformed service under 38
U.S.C. § 4313(a)(2).[2]    The administrative judge ("AJ")

---

[2]    38 U.S.C. § 4313 provides in pertinent part,

(a) Subject to subsection (b) (in the case of any
employee) and sections 4314 and 4315 (in the case
of an employee of the Federal Government), a per-
son entitled to reemployment under section 4312,
upon completion of a period of service in the uni-
formed services, *shall be promptly reemployed in a
position of employment in accordance with the fol-
lowing* order of priority:

. . .

(2) Except as provided in paragraphs (3) and
(4), in the case of a person whose period of
service in the uniformed services was for more
than 90 days—

(A) in the position of employment in which
the person would have been employed if
the continuous employment of such person
with the employer had not been interrupt-
ed by such service, *or a position of like sen-
iority, status and pay*, the duties of which
the person is qualified to perform; or

(B) in the position of employment in which
the person was employed on the date of
the commencement of the service in the
uniformed services, or a position of like
seniority, status and pay, the duties of
which the person is qualified to perform,
only if the person is not qualified to per-
form the duties of a position referred to in
subparagraph (A) after reasonable efforts
by the employer to qualify the person.

agreed that the Program Support Specialist position was not of "like status" to Mr. Crawford's old position and granted his request for corrective action. As part of that corrective action, the AJ ordered the Agency to identify and place Mr. Crawford in a position of "like status" to an IT Specialist. The AJ also ordered, pursuant to 5 C.F.R. § 353.110(a), that if the Agency determined that no appropriate positions were available or if it was otherwise impossible or unreasonable to reassign Mr. Crawford to such a position, then the Agency should notify the Office of Personnel Management (OPM) to provide Mr. Crawford with an opportunity to apply for placement assistance. Neither party sought review of these orders, which became final on March 31, 2010.

The Agency thereafter submitted a notice of compliance with the corrective action, asserting it was not able to find Mr. Crawford a position of "like status" to IT Specialist and, therefore, had requested the OPM's placement assistance. In response, Mr. Crawford filed a petition for enforcement with the Board challenging the Agency's alleged compliance with the corrective action. Mr. Crawford argued that the Agency was required to search for all positions of "like status" or the "next best" available position, "whether occupied or not" before concluding there were no appropriate positions available and transferring the matter to the OPM for placement assistance. Since the Agency's search for positions was "apparently limited to vacant positions," Mr. Crawford believed that the Agency failed to perform an adequate search and, consequently, did not comply with the ordered corrective action.

The AJ agreed with Mr. Crawford and granted his petition for enforcement of the ordered corrective action.

---

38 U.S.C. § 4313 (emphasis added).

The Agency's search was faulted for being overly restrictive in identifying positions of "like status" because "it focused on only vacant positions." The AJ therefore recommended that the Agency conduct an agency-wide search for a position of "like status" in order to comply with the order for corrective action.

The Agency subsequently reassigned Mr. Crawford from his position as a Program Support Specialist to a position as an IT Specialist within ACE-IT (Mr. Crawford's "new position"). This new position has the same title and grade as his old position (i.e., "IT Specialist, GS-2210-11"). The new position is also located at the same duty station as the old position.

Mr. Crawford appealed to the Board to contest the adequacy of his assignment to the new position. Mr. Crawford argued that while the title, grade, and location were the same as his old position, the position was nevertheless still not of "like status" to his old position. He argued that the differences in duties associated with the positions precluded them from being of "like status." In particular, Mr. Crawford asserts that his old position primarily involved hardware-related duties, such as installing, repairing, evaluating, and configuring computer systems and their associated devices, and it only required him to perform some limited software-related duties. In his new position, however, his primary duties involve software asset management and he does not have any hardware-related responsibilities. Mr. Crawford also argued that he was not qualified, as required by USERRA, to perform the duties associated with his new position.

The Board disagreed. The Board found it undisputed that Mr. Crawford's old and new positions were similar or identical with regard to pay, tenure, seniority, working conditions, and rank or responsibility. The Board weighed those factors against the alleged differences in duties and found that, despite the non-identical duties,

overall the positions were similar enough to comply with the "like status" standard of USERRA. The Board also believed that Mr. Crawford was qualified for the new position since he had already performed the position satisfactorily. Additionally, any argument Mr. Crawford had regarding a lack of qualification would be overcome once he received additional training. Based on these findings, the Board concluded that the Agency was in compliance with the order for corrective action and dismissed Mr. Crawford's appeal.

Mr. Crawford appeals the Board's dismissal. We have jurisdiction under 28 U.S.C § 1295(a)(9).

## STANDARD OF REVIEW

The scope of our review of a decision of the Board is limited. In general, we can set aside the Board's decision only if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003).

In determining whether the Board's decision is supported by substantial evidence, the question "is not what the court would decide in a de novo appraisal, but whether the administrative determination is supported by substantial evidence on the record as a whole." *Parker v. U.S. Postal Serv.*, 819 F.2d 1113, 1115 (Fed. Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

## DISCUSSION

Chapter 43 of Title 38 of the United States Code, "Employment and Reemployment Rights of Members of the Uniformed Services," provides employment protection

to those citizens called to active duty in the military services.  USERRA, 38 U.S.C §§ 4301–33; *see also Nichols v. Dep't of Veterans Affairs*, 11 F.3d 160, 162 (Fed. Cir. 1993).  Under USERRA, an individual is entitled, following his uniformed service, to be reemployed in a position of "like seniority, status, and pay."  38 U.S.C §4313(a)(2). The implementing regulations note that when the employee's position is abolished during uniformed service, "the agency must reassign the employee to another position of like status, and pay."  5 C.F.R. § 353.209(a). Although the statute does not define what is meant by "status," the implementing regulations explain that it includes "opportunities for advancement, general working conditions, job location, shift assignment, rank, responsibility, and geographical location."  20 C.F.R. § 1002.193.

There is no fixed test for determining whether two positions are of "like status."  Rather, we have indicated that different criteria can be important in comparing the "status" associated with employment positions in a particular case.  For instance, in *Nichols*, we said, "a subsequent position must carry with it like *responsibility*, *duties* and *authority* if it is to be of like status and thus meet the requirements of the statute." *Nichols*, 11 F.3d at 164 (Fed. Cir. 1993) (emphasis added).  There, we found differences in rank and authority to be dispositive in the "like status" inquiry.  *Id.* at 163–64 ("It goes without saying that when one starts out as the boss, but is placed in a position subordinate to the replacement boss, and other new bosses, there is incontestably a loss of authority, and accordingly a diminished status.").  We have also focused on shift assignments and working hours to evaluate "like status."[3]  *Smith v. U.S. Postal Serv.*, 540 F.3d

---

[3]  The flexible approach adopted in our precedent is also consistent with how other courts have evaluated the employment "status" inquiry.  *See, e.g., Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 183 (2d Cir. 2011)

1364, 1366 (Fed. Cir. 2008) ("case law establishes that 'shift assignment' and regular hours are benefits of employment" subsumed in our "status" inquiry).

The Board considers the "totality of the circumstances" when evaluating the "status" of an employment position. The Board recognized that this approach was conconsistent with the legislative intent of USERRA. *See Heidel v. U.S. Postal Serv.*, 69 M.S.P.R. 511, 515, SL-0353-93-0390-C-1, 1996 WL 73314, at *2 (M.S.P.B. Feb. 13, 1996) (the legislative history "indicates congressional approval of a 'totality of the circumstances test' in determining whether a returning veteran has been restored to a position of 'like status'"). In doing so, the Board identified House Report No. 102-56, which cites with approval the federal district court's decision in *Monday v. Adams Packing Ass'n, Inc.*, 73-102-CIV-T-H, 1973 WL 958 (M.D. Fla. Dec. 6, 1973), as further support for considering the "totality of the circumstances" test. The *Monday* court explained the inquiry as follows:

> The standards by which to measure or evaluate the relative "status" of a given job classification, as distinguished from seniority and pay comparisons, is a subject which has received little attention in the cases or the regulations. The Court concludes, however, *that the relative "status" of a job is to be determined from the totality of the circumstances* including (in addition to seniority and pay) such considerations as opportunities for ad-

---

(considering number and valuation of accounts serviced by employee prior to uniformed service); *Duarte v. Agilent Techs., Inc.*, 366 F. Supp. 2d 1039, 1042, 1045–46 (D. Colo. 2005) (considering change, following employee's uniformed service, from more "primary" role to new role "providing minimal assistance to other primary" employees).

vancement, general working conditions, job location, shift assignment, rank or responsibility, etc.

*Monday*, 1973 WL 958, at *3 (emphasis added).

We agree with the Board's approach. A proper evaluation of "like status" within the meaning of 38 U.S.C. § 4313 includes consideration of the totality of the circumstances. This interpretation is supported by the relevant implementing regulations, 20 C.F.R. § 1002.193 (listing various criteria subsumed in "status"), USERRA's legislative history, H.R. Rep. No. 56, 102d Cong., 1st Sess. 28 (1991), and our case law. As with any test that considers the totality of the circumstances, certain factors cannot be singled out as dispositive without first weighing all of the other potentially competing factors. This is not to say that in some cases an individual factor cannot prove dispositive. Rather, it means that before elevating the importance of a single factor in the "like status" inquiry, the impact of that factor must be considered within the context of all other factors that are relevant to the inquiry.

It is also important to note that the statute should be interpreted broadly in favor of individuals returning from military service. This principle has long been recognized by this Court in resolving disputes arising under USERRA. *See Nichols*, 11 F.3d at 162–63 ("The historical development of section 4301 shows that Congress intended it to be interpreted broadly in favor of those returning from military service. The original 1940 legislation was intended to offer veterans as much protection with respect to reemployment and retention of employment as is within reasonable bounds.") (internal quotation marks and brackets omitted). Indeed, the preference of the Act is "to return the veteran to 'such position' as [she] had previously occupied." *Nichols*, 11 F.3d at 162–63. We thus construe the statutory language to give effect to Congress' intent that a veteran not be penalized by reason

of her absence, but that she retain her position, and any accrued benefits, as if she had never left. *See id.* at 163.

While we weigh close cases of "status" in favor of the veteran, we also acknowledge that restoring a veteran to her exact former position, in some cases, is neither desirable nor feasible. This understanding is directly implied by the regulatory scheme implemented by USERRA. For example, 5 C.F.R. § 353.209 provides that "[i]f the employee's position is abolished during [her] absence, the agency must reassign the employee to *another position* of like status, and pay." 5 C.F.R. § 353.209 (emphasis added). This provision recognizes that a restoring agency is not required to recreate a position that the agency has retired or abolished. *See Nichols*, 11 F.3d at 163 ("Even as the preference of the Act is to give the veteran his old job back, it does give the employer some discretion, 'in accordance with the dictates of sound management,' to restore the veteran to another position if it is truly of like seniority, status, and pay . . . .") (quoting *Bova v. General Mills, Inc.,* 173 F.2d 138, 140 (6th Cir. 1949)). Thus, USERRA strikes a balance between the veteran and the practical reality of a dynamic workplace. In considering whether a veteran has been restored to a position of "like status" we are not required to ignore constraints imposed by programs, resources, and needs that do not remain static. Instead, we acknowledge the existence of considerations that evolve in tune with a progressing society.

With the foregoing considerations in mind, we turn to the Board's comparison of Mr. Crawford's old and new positions. Prior to his uniformed service, Mr. Crawford's old position was Information Technology Specialist, GS-2210-11. The Board described this position "as that of a hardware specialist in the Information Management Office." *Crawford v. Dep't of Army*, 117 M.S.P.R. 38, 45 (M.S.P.B. 2011). The Board noted that, in his old position, Mr. Crawford's duties involved installing, repairing, evaluating, and configuring computer systems and their

devices." *Id.* The Board specifically noted Mr. Crawford's admission that his old position, at least in part, entailed "software-related duties." *Id.* The Board therefore determined that in his old position Mr. Crawford: "(1) installed, repaired, evaluated and configured computer systems, including software systems; (2) maintained an inventory and insured proper registration and receipts for hardware and software; and (3) called vendors for resolution of problems involving hardware and software." *Id.*

On Mr. Crawford's return from uniformed service, the Agency reassigned Mr. Crawford to a position quite different from his old position, presumably because his old position had been abolished. After he protested, the Agency assigned Mr. Crawford to a position at his former facility having the same classification as his old position, namely, Information Technology Specialist, GS-2210-11. Mr. Crawford's new position is within the newly created ACE-IT. The Board described Mr. Crawford's new position "as that of a software asset manager who administers, develops, delivers and supports IT systems and services." *Id.* According to the Board, in his new position Mr. Crawford is responsible for: "(1) inventory management and logging; (2) ensuring license compliance; and (3) identifying, reporting and resolving a variety of IT issues and problems." *Id.*

Reviewing Mr. Crawford's old and new positions, and considering the totality of the circumstances, we do not find that the Board acted arbitrarily in determining that Mr. Crawford's old and new positions are of "like status." It is undisputed that Mr. Crawford's "new position is similar or identical to his prior position in regard to pay, tenure, seniority, working conditions, and rank or responsibility." *Id.* These factors weigh strongly in favor of the Board's decision. Additionally, Mr. Crawford does not dispute that his new position is "in the same general information management field in which he previously worked." *Id.* at 46.

We disagree with Mr. Crawford's attempts to characterize his old position as solely having duties related to hardware. The description for Mr. Crawford's old position makes reference to various responsibilities involving "software." (Appellee's App. A11.) For instance, the "Duties" of that position included maintaining "an inventory of all hardware *and software*" and calling vendors "for hardware *and software* resolution." *Id.* (emphasis added). Mr. Crawford's old position also specifically required "[k]nowledge of common *Off-the-Shelf software . . .* for *Installation and support [of] users*" and required him to "[i]nstall Off-The-Shelf standard *software*; *network driver* [sic], *printer driver(s)*, and provide[] efficient memory configuration." *Id.* (emphases added). These are software-related duties. The specification of Mr. Crawford's old position further notes that "[d]ue to rapid changes in computer technology, work requires wide-rang[ing] knowledge of functional characteristics of many new computer devices. Employee requires *quick adoption of new technologies . . . .* Incumbent is required to install and configure all new and up-to-date technology." (Appellee's App. A12 (emphasis added).) In sum, Mr. Crawford's old position included software-related duties and he must have anticipated that those duties would likely require that he be able to adapt to new technologies involving software.

In his new position, Mr. Crawford has expanded software responsibilities. His current duties include tracking software assets, developing software management processes and policies, and implementing a software library. He also has various responsibilities related to data storage and management. *Id.* Executing the duties of Mr. Crawford's new positions requires knowledge of and skill in applying software management concepts. *Id.* Mr. Crawford is also required to "recommend new or modified standards to increase efficiency." *Id.* While these duties certainly increase the focus on the software duties of an

IT Specialist, we do not find that the Board acted arbitrarily in determining that this adjusted focus did not amount to a change in "status" from Mr. Crawford's old position.

In many ways, the duties of Mr. Crawford's new position appear to be commensurate with the natural evolution, directed by changing needs and technological developments, of his old position. Mr. Crawford's old position included software-related duties and explicitly required the ability to adapt to a rapidly changing technical setting. In his new position, Mr. Crawford's focus on software does not represent a wholesale substitution in new duties that were entirely absent from the bundle of responsibilities and requirements of his old position. The shifted focus only reflects that the apportionment of software-related duties has increased. Thus, while some of the duties of his new position are different from his old position, we cannot say that an IT specialist would not naturally have been required to adapt to increased software-related duties as an inevitable response to the demands of evolving technological priorities.

Like Mr. Crawford, all of his former co-workers "all essentially lost their positions" as a result of the A-76 outsourcing. *See Crawford*, 117 M.S.P.R. at 46. Those individuals "either successfully competed for non-information management positions in the newly created ACE-IT, or the agency placed them in non-information management positions elsewhere within the District." *Id.* Notwithstanding Mr. Crawford's uniformed status, those co-workers were situated equally with him and they were not automatically entitled to positions within ACE-IT in the information management field. Yet, deservingly, Mr. Crawford has been assigned, without competition, to a position at ACE-IT with the same title, grade, and classification as his old position, in the same duty station, and with substantially similar duties. Conversely, many of Mr. Crawford's coworkers were not able to secure similar

positions within ACE-IT. Mr. Crawford's uniformed status therefore provided him with advantages over his former co-workers in securing his new position.

Mr. Crawford also argues that the Board erred by concluding that he was qualified, or could be qualified through reasonable efforts, to perform the duties of his new position. The record does not support these contentions. To the contrary, the record indicates that Mr. Crawford was already performing the duties of his new position and his supervisor declared that such duties required little or no formal training. Based on these facts and considering the substantial overlapping duties between his old and new positions, as described above, we do not find that it was arbitrary for the Board to conclude that Mr. Crawford satisfied the qualification requirements of his new position.

In view of these considerations, we conclude that the Board did not act arbitrarily or contrary to law in determining that, despite some differences in duties, Mr. Crawford's old and new positions are of "like status" within the meaning of 38 U.S.C. § 4313.

Having considered the balance of Mr. Crawford's arguments, we find no reversible error in the determinations of the Board.

### CONCLUSION

In view of the foregoing, we conclude that the Board did not act arbitrarily, or contrary to law, in determining that the Agency has satisfied its obligation under 38 U.S.C. § 4313 to restore Mr. Crawford to a position of "like seniority, status and pay." Accordingly, the decision of the Board is

**AFFIRMED**