NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HARROLL INGRAM,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2018-2415

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-17-0498-W-1.

---

Decided:  June 12, 2019

---

HARROLL INGRAM, Sanford, FL, pro se.

KRISTIN MCGRORY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by JOSEPH H. HUNT, STEVEN JOHN GILLINGHAM, ROBERT EDWARD KIRSCHMAN, JR.

---

Before NEWMAN, SCHALL, and DYK, *Circuit Judges.*

PER CURIAM.

DECISION

Harroll Ingram petitions for review of the initial decision of the administrative judge ("AJ") of the Merit Systems Protection Board ("Board") in *Ingram v. Department of the Army*, No. AT-1221-17-0498-W1, 2018 MSPB LEXIS 2553, *1 (M.S.P.B. July 9, 2018) (App. 3–26). The AJ's initial decision became the final decision of the Board on August 13, 2018. In his initial decision, the AJ denied claims by Mr. Ingram that the Department of the Army ("agency") had retaliated against him in various respects for his having engaged in protected whistleblowing activity. We *affirm*.

DISCUSSION

I.

At all times relevant to this appeal, the agency employed Mr. Ingram as a Computer/Systems Engineer with its Program Executive Office for Simulation, Training, and Instrumentation in Orlando, Florida. On May 18, 2017, Mr. Ingram filed an Individual Right of Action ("IRA") appeal with the Board. In it, he alleged that, in retaliation for protected whistleblowing activity, the agency took certain personnel actions against him. He claimed that these included unfairly low performance appraisals for two consecutive years (2014 and 2015) and moving him from his position as a lead engineer with the Medical Simulation Training Center ("MSTC") team to a non-lead engineer position with the Veterans Health Administration ("VHA") projects team. App. 3–4. On July 9, 2018, following a hearing conducted by video conference, the AJ rendered his initial decision, rejecting Mr. Ingram's claims. As noted, on August 13, 2018, the AJ's initial decision became the final decision of the Board.

*2014 Performance Evaluation*

In his initial decision, the AJ determined first that Mr. Ingram had failed to show by a preponderance of the evidence that his prior protected whistleblowing activity was a contributing factor in his lower than expected 2014 performance rating. App. 11–12, 14–15. The AJ arrived at this finding for several reasons. First, the AJ noted that Tony Marton, the official responsible for Mr. Ingram's 2014 performance appraisal, testified that he became aware of a prior (2009) IRA appeal by Mr. Ingram after Mr. Ingram was assigned to the MSTC team. App. 12. In that regard, the AJ noted that it appeared that Mr. Ingram was assigned to Mr. Marton's team sometime between July 25, and October 3, 2011. *Id.* The AJ further noted that the record indicated that Mr. Marton issued the 2014 performance evaluation on January 6, 2015, more than three full years after the date on which Mr. Ingram was assigned to the MSTC team. "The Board has indicated," the AJ stated, "that a period of three years between the protected activity and the personnel action is too long a gap to infer a causal connection between an appellant's protected whistleblowing activity and a personnel action." *Id.* (citing *Salinas v. Dep't of the Army*, 94 M.S.P.R. 54, ¶ 10 (2003)). The AJ pointed out that, under these circumstances, Mr. Ingram could not rely on the "knowledge/timing test" to establish that his prior whistleblowing activity was a contributing factor in the evaluation he received for the 2014 performance year. *Id.*[1] In addition, the AJ found that there was

---

[1]    The knowledge/timing test allows an employee to demonstrate that a protected activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the protected activity, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the protected

no evidence to suggest that the whistleblowing activity at issue was personally directed at Mr. Marton. The AJ also found that Mr. Ingram had failed to present evidence suggesting that Mr. Marton had any personal desire or motive to retaliate against him based upon his protected whistleblowing, which was primarily directed at the actions of the former Program Manager for the MSTC. App. 13. Finally, the AJ found that, despite Mr. Ingram's arguments to the contrary, the evidence suggested that several higher-ranking individuals, none of whom appeared to have been implicated by Mr. Ingram's whistleblowing activity, reviewed Mr. Marton's assessment of Mr. Ingram's contributions and concluded either that the assessment was accurate, or that any inaccuracies in the assessment were too minor to have effected Mr. Ingram's overall performance rating. App. 14.

*2015 Performance Evaluation*

The supervisor on Mr. Ingram's 2015 performance rating was Vanette Johnson. The AJ found that, when Ms. Johnson issued Mr. Ingram's 2015 performance evaluation in January of 2016, she did so within a year of her discovery that Mr. Ingram previously had filed IRA appeals against the agency. Under these circumstances, the AJ concluded that Mr. Ingram established that "he engaged in protected activity and, pursuant to the knowledge/timing test, such activity was a contributing factor in Johnson's decision regarding [Mr. Ingram's] 2015 performance evaluation." App. 15–16 (citing *Scoggins v. Dep't of the Army*, 123 M.S.P.R. 592, ¶25 (2016)). The AJ also concluded, however, that the agency had established by clear and convincing evidence that it would have taken the same action even in the absence of Mr. Ingram's protected whistleblowing activity. App. 16; *see Carr. v. Soc. Sec. Admin.*, 185 F.3d

---

activity was a contributing factor in the personnel action. *See* 5 U.S.C. § 1221(e)(1).

1318, 1322 (Fed. Cir. 1999) (citing 5 U.S.C. § 1221(e) & *Kewley v. Dep't of Health and Human Servs.*, 154 F.3d 1357, 1364 (Fed. Cir. 1998)). First, the AJ found that it did not appear that Ms. Johnson was personally implicated in any of Mr. Ingram's protected whistleblowing activity and that the record contained no evidence indicating that she had a motive to retaliate against Mr. Ingram. App. 16. Second, the AJ noted that, as had been the case with Mr. Marton and the 2014 performance evaluation, higher agency officials who were not involved in Mr. Ingram's whistleblowing allegations concurred with the ratings Ms. Johnson gave Mr. Ingram. *Id.* at 16–17. Finally, the AJ stated that "perhaps the strongest evidence in support of the agency's decision concerning the personnel action resulting from [Mr. Ingram's] rating for the 2015 performance year is the fact that, even if Johnson had given [Mr. Ingram] the ratings he believed he deserved with respect to the elements he complained about to [the Office of Special Counsel], his [Overall Contribution Score] for that year would not have changed." *Id.* at 17.

### Reassignment from the MSTC Team
### to the VHA Projects Team

Finally, the AJ considered Mr. Ingram's claim that his transfer from the MSTC team to the VHA projects team was in retaliation for his protected whistleblowing activity. App. 18–19. In that regard, the AJ concluded that Mr. Ingram had failed to show by a preponderance of the evidence that his transfer to a different position was a "personnel action" subject to the Whistleblower Protection Act. *Id.* at 19. In arriving at that conclusion, the AJ found that Mr. Ingram had failed to establish that his reassignment from the MSTC team to the VHA projects team resulted in a significant change in his duties, responsibilities, or working conditions. *Id.* at 18; *see* 5 U.S.C. § 2302(a)(2)(A) (defining "personnel action" as, inter alia, "any other significant change in duties, responsibilities, or working conditions"); *see also Holderfield v. M.S.P.B.*, 326 F.3d 1207, 1209 (Fed.

Cir. 2003). In addition, the AJ found that although Mr. Ingram "claimed that his assignment to the VHA projects team affected his promotion potential, . . . other than his bare assertion, he presented very little evidence to support his contention that his reassignment affected his promotion potential." App. 18.

Based upon his findings and conclusions, the AJ denied Mr. Ingram's request for corrective action. App. 18. After the AJ's initial decision became the final decision of the Board, Mr. Ingram timely petitioned for review. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Miller v. Fed. Deposit Ins. Corp.*, 818 F.3d 1361, 1365 (Fed. Cir. 2016).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Crawford v. Dep't of the Army*, 718 F.3d 1361, 1365 (Fed. Cir. 2013) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The standard "is not what the court would decide in a de novo appraisal, but whether the administrative determination is supported by substantial evidence on the record as a whole." *Id.* (quoting *Parker v. U.S. Postal Serv.*, 819 F.2d 1113, 1115 (Fed. Cir. 1987)). Finally, regarding factual determinations, we have stated that credibility determinations by administrative judges are "virtually unreviewable." *Hambsch v. Dep't of the Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986).

## III.

We have considered all of the arguments raised by Mr. Ingram on appeal. Having done so, we see no error in the Board's final decision. Mr. Ingram has pointed us to no legal error on the part of the AJ. Rather, he challenges various factual findings by the AJ and, in some instances, credibility determinations by the AJ. In neither case, however, has Mr. Ingram shown reversible error in the AJ's thorough and well-reasoned initial decision, which we have described above. In short, the AJ did not err in denying Mr. Ingram's claim for corrective action.

### CONCLUSION

For the foregoing reasons, the final decision of the Board is affirmed.

### AFFIRMED

### COSTS

Each party shall bear its own costs.