**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2033**

MAJOR GENERAL THOMAS P. HARWOOD, III,

Plaintiff - Appellant,

v.

AMERICAN AIRLINES, INC.,

Defendant - Appellee.

**No. 18-2074**

MAJOR GENERAL THOMAS P. HARWOOD, III,

Plaintiff - Appellee,

v.

AMERICAN AIRLINES, INC.,

Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, Senior District Judge. (1:17-cv-00484-LO-JFA)

Argued: January 31, 2020                    Decided: July 6, 2020

Before NIEMEYER, WYNN, and FLOYD, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wynn and Judge Floyd joined.

———————————

**ARGUED:** Adam Augustine Carter, EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant/Cross-Appellee. Anton Melitsky, O'MELVENY & MYERS LLP, New York, New York, for Appellee/Cross-Appellant. **ON BRIEF:** Andrew D. Howell, R. Scott Oswald, Nicholas Woodfield, THE EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant/Cross-Appellee. Jason M. Zarrow, O'MELVENY & MYERS LLP, Washington, D.C., for Appellee/Cross-Appellant.

———————————

NIEMEYER, Circuit Judge:

In this case, a member of the uniformed services claims relief from his civilian employer for not rehiring him *promptly* after he completed a tour of duty, as required by the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

As Major General Thomas P. Harwood neared completion of a tour of duty with the United States Air Force Reserve — which was scheduled to end on August 31, 2015 — he sought to return to his former employment as a pilot with American Airlines, Inc. In response to his request, American Airlines confirmed that Harwood would be reemployed in his requested position as of September 1, 2015. But when Harwood thereafter disclosed that during his tour of duty he had been diagnosed with atrial fibrillation (a condition involving an irregular heartbeat) and therefore was unable to secure the required medical clearance from the Federal Aviation Administration ("FAA") to serve as a pilot, the airline told Harwood that it could not rehire him as a pilot but that it could "explore other paths." Following further communications between the parties, American Airlines offered Harwood an alternative position on October 22, 2015, which Harwood initially turned down. After several months, however, Harwood accepted the alternative position and was accordingly reemployed by the airline on January 25, 2016. On that day, Harwood also obtained a waiver from the FAA that entitled him to serve again as a pilot, and the next day, American Airlines reassigned him to a pilot position, which he continues to hold.

Harwood commenced this action in April 2017 under USERRA to recover damages he incurred from September 1, 2015, to January 25, 2016, due to the airline's failure to reemploy him *promptly*, as required by the Act. He also claimed that, during the rehiring

process, the airline discriminated against him on the basis of his uniformed service, also in violation of the Act.

The district court dismissed Harwood's discrimination claim but granted him judgment on his claim that American Airlines failed to rehire him promptly and awarded him slightly more than $50,000 in damages. The court, however, rejected both Harwood's claim that the airline's action was "willful," which would have entitled him to liquidated damages, and his request for injunctive relief.

Harwood filed this appeal, contending that the district court erred (1) in dismissing his discrimination claim; (2) in determining that the airline's violations were not willful; (3) in denying his request for injunctive relief; and (4) in reducing the damage award by income he received from the Air Force for service performed during the period of delay. American Airlines filed a cross-appeal, contending that the district court erred (1) in concluding that the airline did not rehire Harwood promptly; and (2) alternatively, in determining the period of time for which Harwood was entitled to damages in the form of backpay.

For the reasons that follow, we affirm on all issues of liability but vacate the damage award and remand for a recalculation of damages.

I

Harwood was first employed by American Airlines as a commercial pilot in 1992. During his employment he also served in the Air Force Reserve and, from time to time, took leave to fulfill his military commitment. From June 2013 to August 31, 2015,

Harwood took leave to serve a tour of duty in Saudi Arabia, and before the end of that tour, on June 3, 2015, he contacted the New York Manager of Flight Crew Administration of American Airlines to inform the airline that he intended to return to work on completion of his tour. He requested that he be assigned as a domestic flight captain of a Boeing 737, based out of LaGuardia Airport in New York, his base before taking leave for his tour of duty. American Airlines responded on August 3, 2015, confirming that Harwood would be reemployed in the requested position on September 1, 2015, and informing him that his retraining would begin on September 5, 2015.

During this same period, Harwood began the process of obtaining a "first-class medical certificate," which was required by the FAA for commercial pilots. In late July or early August, however, he discovered that his ability to obtain the certificate was impeded by the fact that while he was on his tour of duty, he had been diagnosed with atrial fibrillation. In August 2015, Harwood requested that the FAA waive the certification requirement, and he sent the agency the necessary documentation for a waiver. He was not, however, cleared for flight at that time. With the start of his pilot retraining approaching, Harwood informed the airline about this problem on August 20, 2015. The airline's New York Manager of Flight Crew Administration responded, asking Harwood to "let [the airline] know as soon as possible if the medical is going to take some time so it [could] avoid setting up a training that [Harwood] [would] not be able to attend." The Manager then called Harwood on August 26 to discuss the situation further. During that conversation, Harwood said that he would like to be reemployed as a pilot notwithstanding his lack of a medical certificate and noted that he had a sick leave balance of 854 hours that

5

he could use while he tried to obtain clearance to fly. The Manager informed Harwood, however, that the airline could not reemploy him as a pilot without the medical certificate or a waiver.

On September 1, 2015, the day on which Harwood was scheduled to be reemployed, he emailed Scott Hansen, the airline's Director of Flight Operations, to obtain confirmation that his employment was beginning on that date. Hansen responded that Harwood could be returned to active employment, "presuming [he] meet[s] USERRA guidelines and company policy for reemployment. So long as you have a current and valid medical, and are available for training, you're good to go." Harwood wrote back by email that he did not yet have the certificate but that he had met all the conditions for reemployment set forth in USERRA. In response, on September 4, 2015, Hansen wrote:

> It looks like you meet the general requirements for reemployment under USERRA (qualifying discharge, timely return, etc.) and we're willing to put you back to work in a reasonable time.
>
> In my view, your situation isn't so much centered on § 4312, which deals with general reemployment. It's really more of a § 4313 issue involving your reemployment position. Assuming you're qualified to fly, we're fully committed to getting you back on the line with the same seniority etc. It seems to me, however, that you're telling us you're not medically qualified to fly which probably puts us under § 4313(a)(3) assuming you have a disability that was incurred in or aggravated while you were serving. If so, our first goal is to try to work with you to see if we can make any reasonable accommodations that will get you back to your position as a line pilot. . . . If there's nothing we can do to reasonably accommodate you so that you can return to flying status, then we can explore other paths. . . .
>
> Please let me know when you can have a meeting or a call to discuss our options. I'll include HR in the process. I look forward to talking to you.

6

After receiving Hansen's email, Harwood retained counsel who wrote the airline on October 1, 2015, stating that Harwood's goal was to be "reemployed as quickly as possible so that he [could] gain access to his 854 hours of sick leave." Counsel requested that Harwood be reemployed as a pilot or, if he were unable to obtain a medical clearance from the FAA, in a position of comparable status and pay in Operations Safety and Compliance or Flight Operations, located in Dallas, Texas. American Airlines responded on October 22, 2015, offering to extend Harwood's military leave while he continued to seek a waiver of the medical certificate requirement or alternatively to employ him in a custom-made position in the airline's Flight Technical Operations Group in the Flight Department in Dallas. The airline explained that this position would be "appropriate for his status" and be compensated "at the same rate he would receive if actively flying." Harwood declined this offer, at least at that time.

During the next three months, Harwood spent time on active duty with the Air Force and received income and benefits from the military for doing so. On January 25, 2016, however, he accepted American Airlines' offer of reemployment in the custom-made position in Dallas. On that same day, Harwood also received a waiver of the medical certificate requirement from the FAA. Accordingly, the airline reassigned Harwood the next day to the position of a Boeing 737 domestic flight captain. Harwood has been employed as a pilot by the airline ever since that date and has taken and returned from additional military leave without incident.

Over a year later — in April 2017 — Harwood commenced this action under USERRA, alleging that the airline discriminated against him as a member of the uniformed

7

services, in violation of 38 U.S.C. § 4311, and that it failed to reemploy him promptly following his tour of duty that ended August 31, 2015, in violation of §§ 4312 and 4313.

The district court granted the airline's motion to dismiss Harwood's discrimination claim brought under § 4311 on the ground that, under its interpretation, "§ 4311 protects veterans from discrimination *after* they have been reemployed following deployment, and [Harwood] has failed to plead any facts that demonstrate that [he] was discriminated against subsequent to his January 25, 2016 reemployment." And on the parties' cross-motions for summary judgment, the court (1) granted judgment to Harwood on his claims under §§ 4312 and 4313, concluding that American Airlines failed to rehire him *promptly*; (2) rejected Harwood's claim for liquidated damages based on the airline's alleged willfulness in delaying rehire; (3) entered a money judgment in favor of Harwood in the amount of $50,184.75, representing his backpay with interest, less the amounts that Harwood received as income from the Air Force for his service during the period of delay; and (4) denied Harwood's motion for an injunction, based on its assessment that the airline's infraction was the result of a one-time misunderstanding by the airline and "nothing suggest[ed] that American [would] make the same mistake in the future."

From the district court's judgment dated August 21, 2018, Harwood filed this appeal, and American Airlines filed a cross-appeal.

II

Harwood contends first that the district court erred in dismissing his discrimination claim under 38 U.S.C. § 4311. The court did so, as it explained, on the ground that § 4311

8

"protects veterans from discrimination *after* they have been reemployed" and that Harwood "failed to plead any facts that demonstrate that [he] was discriminated against" after his reemployment. Harwood argues that § 4311's protections are broader than what the court held, covering also the airline's conduct *during* the reemployment process. As he alleged in his complaint, the airline "fail[ed] to treat him as if he had been continuously employed in lieu of his military service" by not reemploying him on September 1, 2015. And he asserted that this failure was motivated by discriminatory animus reflected by comments made to him earlier in his career. According to his complaint, in the summer of 1997, an employee at the airline's Dallas Flight Office told Harwood that the airline would not permit him to take "so much military leave" and asked him to "decide if [he is] going to play soldier or be an airline pilot." In 1998, when Harwood was based in Los Angeles, he was "criticize[d]" by the airline "for his military service." And in that same year, the airline removed Harwood from its payroll for three weeks while he performed "alternative weeks of military service." That matter, however, was resolved internally when Harwood raised the issue with the Chief Pilot at Los Angeles International Airport.

American Airlines argues that the district court's ruling correctly followed our decisions in *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006), and *Butts v. Prince William County School Board*, 844 F.3d 424 (4th Cir. 2016), which, in its view, limited § 4311's prohibition of discrimination to an employer's conduct *after* reemploying a servicemember. The airline also argues that reading the text of § 4311 to prohibit discriminatory conduct during the time of reemployment would render that provision surplusage, as such conduct is already regulated by §§ 4312 and 4313. In the

9

alternative, the airline maintains that Harwood's complaint failed to "adequately plead that his military status (as opposed to his lack of FAA clearance) was a motivating factor in [its] decision not to reemploy him as a pilot."

At the outset, we note that USERRA "was enacted to protect the rights of veterans and members of the uniformed services" and therefore "must be broadly construed in favor of its military beneficiaries." *Francis*, 452 F.3d at 303 (cleaned up). In particular, § 4311 broadly prohibits discrimination in the hiring, rehiring, and retaining of servicemembers, providing:

> A person who . . . has performed . . . service in a uniformed service shall not be denied initial employment, *reemployment*, retention in employment, promotion, or any benefit of employment by an employer on the basis of that . . . service . . . .

38 U.S.C. § 4311(a) (emphasis added). And subsection (c) explains that "[a]n employer shall be considered to have engaged in actions prohibited . . . under subsection (a), if the person's . . . service . . . in the uniformed services is a *motivating factor* in the employer's action." *Id*. § 4311(c)(1) (emphasis added). Thus, to succeed on a claim under § 4311(a), a servicemember must demonstrate (1) that his employer took an adverse employment action against him; (2) that he had performed, applied to perform, or had an obligation to perform as a member in a uniformed service; and (3) that the employer's adverse action was taken "on the basis of" that service, such that the service was "a motivating factor" in the action. *Id*. §§ 4311(a), (c)(1). The employer can avoid liability under this provision if it can demonstrate that it would have taken the adverse employment action regardless of whether the person had served in the uniformed services. *See id*. § 4311(c)(1). The plain

10

text thus reads more broadly than the interpretation given to it by the district court. While the district court appropriately acknowledged § 4311's protection against discriminatory action *after* the servicemember is reemployed, the provision is not so limited, as it also applies explicitly to "initial employment" and "reemployment." *Id*. § 4311(a).

While our decisions in *Francis* and *Butts* addressed post-hiring conduct — *see Francis*, 452 F.3d at 304 ("Section 4311 prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services *after they return from a deployment and are reemployed*" (emphasis added)); *Butts*, 844 F.3d at 430 ("Section 4311 applies *after a veteran is reemployed* following deployment" (emphasis added) (citing *Francis*, 452 F.3d at 304)) — those cases did not purport to restrict § 4311's coverage to post-hiring conduct. Their discussion of § 4311's post-hiring protections served to contrast § 4311 with §§ 4312 and 4313, which apply only at the time of reemployment, and thus the cases must be understood as simply underscoring that § 4311 applies *even after* reemployment. But nothing in the language or reasoning of those two cases undermines the full scope of § 4311's text, which provides for the provision's application also to the "den[ial] [of] initial employment [and] reemployment." *Id.* § 4311(a).

The airline's argument that such a broad reading would render § 4311 as surplus to §§ 4312 and 4313, which also govern conduct during the rehiring of servicemembers, overlooks the differing criteria required for a discrimination claim under § 4311, on the one hand, and claims under §§ 4312 and 4313, on the other. Crucially, a plaintiff must prove that discrimination on the basis of service was a motivating factor in an employment

11

action to recover under § 4311. By contrast, §§ 4312 and 4313 provide relief regardless of intent, but only if a servicemember has met other criteria such as, for example, not having taken leave from the employer for performance of uniformed service for more than five years cumulatively. *See id*. § 4312(a)(2).

Although we conclude that the district court read § 4311 too restrictively, we nonetheless affirm its decision to dismiss Harwood's § 4311 claim because the complaint's factual allegations of discriminatory intent were far too attenuated to make them relevant to the airline's conduct in 2015. To plead animus, Harwood's complaint recited a few scattered comments made by airline employees in Dallas and Los Angeles over 15 years prior to the allegedly discriminatory action. He does not, however, allege that those comments were made by anyone connected with the decisionmaking on his 2015 reemployment. Indeed, the complaint itself indicates that American Airlines failed to reemploy Harwood on September 1, 2015, because Harwood did not then possess a valid first-class medical certificate — a reason entirely unrelated to his service in the Air Force Reserve. Although discriminatory motivation under USERRA can be inferred by an employer's expressed hostility towards servicemembers protected by the Act, the discriminatory animus must nonetheless be connected in some way to the adverse employment action. *See* 38 U.S.C. § 4311(a) (prohibiting denial of reemployment "on the basis" of uniformed service). But Harwood has not pleaded sufficient factual content to support a "reasonable inference" that his military service was a motivating factor in any of the airline's conduct about which he complains. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12

Accordingly, we affirm the district court's dismissal of Harwood's § 4311 claim.

III

American Airlines contends that the district court erred in finding it liable under §§ 4312 and 4313. The district court concluded that under the "plain language" of those provisions, American Airlines was required to reemploy Harwood promptly after it was shown that he satisfied the requirements for reemployment described in § 4312, and failing to do so constituted a violation, even if the appropriate reemployment position had not yet been determined. The court acknowledged that the airline was "entitled to engage in a § 4313 analysis upon learning that General Harwood [could] not fly airplanes because he lack[ed] a first-class medical certificate," but it held that the airline violated § 4312 in delaying his reemployment beyond September 1, 2015. The airline disagrees with the court's statutory interpretation and argues that it fully complied with the statutory scheme by first determining that the § 4312 criteria were satisfied and then proceeding under § 4313 to identify an appropriate reemployment position. The airline thus contends that it was under no obligation to formally rehire Harwood until it had identified a proper position. And it argues further that, in light of Harwood's medical condition, its identification of such a position on October 22 was sufficiently prompt under the statute.

Harwood contends, as the district court held, that USERRA requires an employer to rehire returning servicemembers as soon as it determines that the § 4312 criteria are satisfied, and only then may it determine which particular position meets § 4313's requirements.

13

Under the statutory scheme, §§ 4312 and 4313 are interconnected, operating in a complementary manner. Section 4312 provides that a returning servicemember is "entitled to the reemployment rights" provided by USERRA if he satisfies three criteria: (1) that he have given "advance written or verbal notice" of his uniformed service to his employer; (2) that the cumulative length of his absence for service up until the time of reemployment "does not exceed five years"; and (3) that he have submitted "an application for reemployment." 38 U.S.C. § 4312(a). And § 4313 operates to define the rights of returning servicemembers "entitled to reemployment under section 4312." *Id*. § 4313(a); *see also Butts*, 844 F.3d at 430. Specifically, § 4313 provides that "a person entitled to reemployment under section 4312 . . . shall be *promptly* reemployed in a position of employment" as determined under that section. 38 U.S.C. § 4313(a) (emphasis added). "Prompt reemployment" is defined by regulation to mean "as soon as practicable under the circumstances of each case." 20 C.F.R. § 1002.181.

Under § 4313(a)(2), the default employment position for a returning servicemember is the so-called "escalator position" — "the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by . . . service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform." 38 U.S.C. § 4313(a)(2)(A). But if a returning servicemember has a "disability incurred in, or aggravated during" his service that prevents him from qualifying for the escalator position, he must be reemployed "in any other position which is equivalent in seniority, status, and pay, the duties of which the

14

person is qualified to perform or would become qualified to perform with reasonable efforts by the employer," or the "nearest approximation" of such a position. *Id.* § 4313(a)(3).

In short, under the statutory scheme created by §§ 4312 and 4313, eligible returning servicemembers must be *promptly* reemployed an in an appropriate position *for which they are qualified.*

Of course, in Harwood's case, it is clear from the record that he was not qualified at the time his tour ended to perform the duties of the escalator position, as without the proper medical clearance, he was ineligible to serve as a pilot. But Harwood *was* eligible for other positions that met the requirements of § 4313, as the airline itself acknowledged when it offered him reemployment in just such a position on October 22. Thus, the issue presented is simply whether the airline acted sufficiently promptly to meet its burden under § 4313 to reemploy Harwood in an appropriate position as soon as was practicable under the circumstances.

On the record in this case, we conclude that the district court did not err in ruling that American Airlines failed to discharge its statutory duty *promptly*. The airline determined at least as early as August 3, 2015 — when it was without knowledge of Harwood's medical condition — that Harwood qualified for reemployment under § 4312. An airline employee so testified, and her testimony is consistent with the airline's contemporaneous response to Harwood, advising him that he would be reemployed on September 1, 2015. And, because the airline was on notice as of August 20 that Harwood had not obtained the clearance necessary for a pilot position, it had nearly two weeks to identify under § 4313 an appropriate alternative position for him to assume on the start date

15

that had previously been scheduled. Thus, we see no error in the district court's conclusion that "promptly" entailed reemployment by September 1, as promised and anticipated by the airline.

American Airlines argues that its October 22 offer to reemploy Harwood in an appropriately senior non-pilot position was sufficiently prompt in view of the circumstances, *i.e.*, Harwood's ineligibility to fly as of September 1. We cannot agree. As noted, the airline learned of Harwood's medical condition on August 20, and it has provided no reason why it could not have identified an appropriate position for Harwood by September 1. Yet it did not offer him reemployment in an appropriate position until October 22, 2015, over two months after it learned that he would likely need to be rehired in a non-pilot position.

At bottom, we find no error in the district court's conclusion that the airline did not reemploy Harwood promptly in an appropriate position. Accordingly, we affirm the district court's order finding that the airline violated USERRA when it failed to reemploy Harwood on September 1.

IV

While Harwood succeeded in the district court on his §§ 4212 and 4213 claims, he nonetheless argues that the court erred in rejecting his argument that American Airlines' conduct in violation of those provisions was "willful," as used in § 4323(d)(1)(C), and therefore that he was also entitled to liquidated damages in an amount equal to his backpay award. In support of this contention, he points to various statements made by American

16

Airlines' employees to the effect that the airline would not reemploy him as a pilot due to his lack of a medical certificate. He focuses especially on statements like the one that the airline's Manager of Flight Administration made — "Under no circumstances would American Airlines ever reemploy a pilot without a medical [certificate]." He argues that communications of this kind constituted "an obvious attempt to get Harwood to go away and forget about any reemployment rights."

The district court, however, rejected Harwood's argument, concluding that on the record before it, "there [was] simply no evidence that American or any of its agents acted unreasonably and in bad faith. Accordingly, liquidated damages are not applicable to the facts of this case."

Section 4323(d)(1) authorizes an award of liquidated damages in an amount equal to the backpay award if the employer's violations are found to be willful. And according to the applicable regulation, a violation is willful "if the employer either knew or showed reckless disregard for whether its conduct was prohibited by the Act." 20 C.F.R. § 1002.312(c). Thus, for example, if an employer ignores an employee's request for reemployment or fails to attempt to comply with the law, the employer's actions might be willful. *See Serricchio v. Wachovia Secs., LLC*, 658 F.3d 169, 191 (2d Cir. 2011).

But the evidence in this case fails to support Harwood's claim. Indeed, it shows without dispute that American Airlines *immediately agreed* to rehire him when he notified the airline of his intent to return. Harwood told the airline that his tour of duty would end on August 31, 2015, and the airline instructed him to report for service the next day, September 1, 2015. And when Harwood later advised the airline that he had a medical

17

condition that precluded his employment as a pilot without an FAA waiver, the airline asked Harwood to let it know about the status of his application for a waiver "as soon as possible" so that it could schedule the necessary training. In a follow-up, the airline told Harwood, "[O]ur first goal is to try to work with you to see if we can make any reasonable accommodations that will get you back to your position as a line pilot. . . . If there's nothing we can do to reasonably accommodate you so that you can return to flying status, then we can explore other paths." And on October 22, it offered Harwood an alternative position that it maintains had the same seniority, status, and pay as he would have received as a pilot. Finally, when Harwood later accepted the offer and also advised the airline of his receipt of an FAA waiver, the airline hired him as a pilot the very next day, a position that he continues to hold. This conduct, which demonstrates that the airline made efforts to work with Harwood to accommodate his request for reemployment — even if it operated under a misunderstanding of the statutory relationship between § 4312 and § 4313 — does not manifest a willful violation, as the district court duly found.

V

Finally, both parties challenge the relief that the district court ordered. Harwood contends that the district court erred in reducing the award by the income he received for military service during the relevant period, arguing that the service income was a "collateral source" that should not have impacted his backpay award. He also contends that the district court abused its discretion in refusing to issue an injunction against American Airlines to prohibit similar conduct in the future.

18

American Airlines contends that the period for which it owes backpay should not have included the period between September 4 and October 1, during which the airline was waiting to hear back from Harwood, as well as the time after October 22, when the airline offered Harwood a position that he did not accept until January 25, 2016. The airline also contends that the district court should not have awarded backpay beginning on September 1, the original scheduled start date, as the airline should have been allowed additional time to rehire Harwood in an alternative position.

With respect to Harwood's argument that his backpay should not have been offset by his Air Force earnings, the district court concluded that Harwood's income during that period was payment for "services that he would not have been able to complete or that would have required leave from [the airline] but for the USERRA violation." Thus, Harwood suffered no lost wages or benefits attributable to the airline's failure to reemploy him during the time he was on active duty with the Air Force. *See* 38 U.S.C. § 4323(d)(1)(B) (authorizing a court to "require the employer to compensate [the plaintiff] for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter"). We find no error in this conclusion reached by the district court.

With respect to the district court's denial of Harwood's request for injunctive relief, we conclude similarly that the district court did not abuse its discretion. While the statute directs the district court to employ all of its equitable powers to "vindicate fully" the servicemember's rights, *see* 38 U.S.C. § 4323(e), Congress nonetheless specified that the court exercise those powers only as it "determines it is appropriate," *id*., which we take as

19

a direction for the district court to exercise discretion. In this instance, the court determined that equitable relief was not appropriate because, as it concluded, the airline construed the relationship between § 4312 and § 4313 in good faith, even if in error, and therefore there was no ground to suspect that the airline would repeat that error in the future. Indeed, since early 2016, Harwood has continued to work for American Airlines and has taken additional leave to serve in the Air Force Reserve, both without incident. In these circumstances, we see no reason to conclude that the district court abused its discretion in determining that injunctive relief was not necessary to ensure that Harwood's rights were fully vindicated.

Finally, with respect to damages, in view of our conclusions in Part III, above, we agree with the district court that the backpay period began September 1, because it was not error to conclude that promptness in this case required Harwood's reemployment by that date. We also reject American Airlines' argument that the period from September 4 to October 1 be excluded on the ground that Harwood failed to engage in the deliberative process. After receiving Hansen's letter on September 4, in which Hansen recited the varying application of three statutory provisions — §§ 4311, 4312, and 4313 — Harwood reasonably perceived a need to retain counsel, and that period therefore should not be charged to him. And because the subsequent delay during the period from October 1, when counsel first contacted American Airlines, and October 22, when American Airlines extended Harwood an offer, is attributable to the airline, it is also responsible for backpay for that time. Thus, Harwood was entitled to damages at least for the period from September 1 to October 22, when American Airlines made its offer to Harwood for an alternative position, which Harwood turned down. On the other hand, the period from

20

October 22, when Harwood turned down American Airlines' offer, until January 25, when he accepted the offer and was rehired, should be at Harwood's expense, unless the position that American Airlines offered on October 22 was not an equivalent position in terms of seniority, status, and pay for purposes of § 4313(a)(3). On that subject, the district court declined to make findings as to the appropriateness of the position offered, and the parties disagree on whether it was an equivalent.

In short, the district court should recalculate damages consistent with this opinion, presumptively imposing backpay damages against American Airlines for the period from September 1 to October 22 and denying damages for the period from October 22 to January 25, unless the offered position was not an equivalent under the Act. And any such calculation should include a setoff for service income Harwood received.

AFFIRMED IN PART,<br>
VACATED IN PART, AND REMANDED