**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-2200**

MAJOR GENERAL THOMAS P. HARWOOD, III,

Plaintiff - Appellant

v.

AMERICAN AIRLINES, INCORPORATED,

Defendant - Appellee.

**No. 21-1137**

MAJOR GENERAL THOMAS P. HARWOOD, III,

Plaintiff - Appellant

v.

AMERICAN AIRLINES, INCORPORATED,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, Senior District Judge.  (1:17-cv-00484-LO-JFA)

Argued:  March 11, 2022                    Decided:  June 17, 2022

Before NIEMEYER and WYNN, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by published opinion.    Judge Floyd wrote the opinion in which Judge Niemeyer and Judge Wynn joined.

_____

**ARGUED:**    Adam Augustine Carter, THE EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant.  Jason Matthew Zarrow, O'MELVENY & MYERS LLP, Los Angeles, California, for Appellee.  **ON BRIEF:**  Andrew D. Howell, R. Scott Oswald, THE EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant.   Anton Metlitsky, O'MELVENY & MYERS LLP, New York, New York, for Appellee.

_____

FLOYD, Senior Circuit Judge:

This case is back before us following a limited remand for a recalculation of damages. We must now address Harwood's appeal of the district court's new orders on damages, attorneys' fees, and costs. Finding no abuse of discretion in the district court's new damages calculations and no clear error in the factual determinations on which it based those calculations, we affirm its judgment. Under our extremely deferential review of the district court's fees determination, we likewise affirm.

I.

As relevant to this opinion, Major General Thomas Harwood, an Air Force reserve service member and long-time American Airlines pilot, brought suit against American Airlines pursuant to the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301-35.[1] Under USERRA, military members returning from service are entitled to reemployment in their civilian jobs if they meet certain criteria. § 4301. If entitled under § 4312, they are reemployed in accordance with stipulations set forth in § 4313. *See Butts v. Prince William Cnty. Sch. Bd.*, 844 F.3d 424, 430-31 (4th Cir. 2016). The default reemployment position, called the "escalator position," is "the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by [military]

---

[1] The full factual background for this case is set forth in our prior opinion. *Harwood v. Am. Airlines, Inc.*, 963 F.3d 408, 412-13 (4th Cir. 2020).

service." § 4313(a)(2)(A). If they incur a disability during their military service that would not allow them to assume the escalator position, the employer must make reasonable accommodations to help them qualify. § 4313(a)(3). Where such accommodations cannot be made, the employer must reemploy them to a position of similar status. *Id.*

In his initial Complaint, filed in April 2017, Harwood claimed that American Airlines violated USERRA, §§ 4312 and 4313, by delaying his reemployment and denying him a pilot position after a qualifying period of military leave from June 2013 to August 2015. During that tour, Harwood was diagnosed with a heart condition and upon his return experienced delays obtaining the necessary Federal Aviation Administration (FAA) medical certification to return to his pilot position operating out of La Guardia Airport in Queens, New York. Upon initial review at the beginning of September 2015, American Airlines acknowledged that Harwood met the § 4312 conditions for reemployment but also believed that it either needed to find another position for him under § 4313 or allow him to use military convalescence leave until he could receive FAA clearance to fly.

After communicating this understanding to Harwood, American Airlines requested that he advise them of a time to discuss reemployment options, but Harwood did not immediately respond. On October 1, 2015, Harwood's counsel requested reemployment and suggested four alternate, non-pilot positions, including three with American Airlines' Flight Department in Fort Worth, Texas. On October 22, 2015, American Airlines extended two options to Harwood. First, because he was "currently unable to qualify for a [FAA] First Class Medical certificate," and therefore could not qualify to be a pilot, American Airlines offered to extend his military leave, giving him time to seek the

4

necessary FAA medical clearance with "reasonable assistance" from American Airlines.[2] J.A. 367. Alternatively, American Airlines offered to "reemploy him in the Flight Technical Operations Group at the Flight Academy in [Dallas-Fort Worth], in a position appropriate for his status." J.A. 367. He would "be compensated at the same rate he would receive if actively flying." J.A. 367. Harwood declined both options but served several more terms of military duty during the following months.

Harwood ultimately agreed to accept the above offered American Airlines position in Fort Worth with a start date of January 25, 2016. However, on January 25, the FAA finally granted his medical certificate. Harwood informed American Airlines and they reinstated him as a pilot the next day. He went through his required pilot training, during which time he received full pay as an American Airlines employee.

Reviewing Harwood's initial complaint, the district court granted summary judgment to Harwood, reasoning that under § 4312, Harwood should have been reemployed on September 1 and that American Airlines' failure to do so also violated § 4313. *Harwood v. Am. Airlines, Inc.*, No. 1:17-cv-0484, 2018 WL 2375692, at *3-5 (E.D. Va. May 23, 2018). It granted summary judgment to American Airlines on Harwood's request for liquidated damages under USERRA, finding no evidence that American Airlines had acted unreasonably and in bad faith. *Id.* Hearing Harwood's motion for reconsideration on the liquidated damages ruling, the court again denied

---

[2] Service members convalescing from a disability incurred during their service may receive additional leave of up to two years under § 4212(e). The leave allowance does not impact the damages calculation.

5

liquidated damages, but awarded back pay for September 1, 2015, to January 26, 2016, less Harwood's military pay during that time. *Harwood v. Am. Airlines, Inc.*, No. 1:17-cv-0484, 2018 WL 8803959, at *3 (E.D. Va. Aug. 20, 2018). The court found that American Airlines' October 22 job offer would not impact damages because it was a course-reversal that failed to cure already-occurred USERRA violations. *Id.* Damages totaled $50,184.75. *Id.* at *4. Harwood appealed, contending that the district court erred in determining that the airline's violations were not willful, in denying his request for injunctive relief, and in reducing the damage award by income he received for military service performed between September 1 and January 26. American Airlines cross-appealed, contending error in the district court's determination that it had not rehired Harwood promptly and, alternatively, challenging the determination as to the period of time for which damages in the form of backpay were owed.

On appeal, this panel affirmed the district court's holdings as to liability under USERRA but remanded for a recalculation of damages because American Airlines should not have been held responsible for the period between Harwood's rejection of the offered position and acceptance "unless the offered position was not equivalent under [USERRA]." *Harwood v. Am. Airlines, Inc.*, 963 F.3d 408, 420 (4th Cir. 2020). On remand, the district court found that American Airlines offered Harwood an equivalent position on October 22 and reduced his back pay to $28,771.41, the amount due for the period from September 1—when Harwood should have been reemployed—up to when American Airlines offered him the equivalent position. *Harwood v. Am. Airlines, Inc.*, No. 1:17-CV-00484, 2020 WL 6580394, at *1-2 (E.D. Va. Oct. 6, 2020). Specifically, it determined that the Flight

Technical Operations Group position offered to Harwood on October 22 was appropriate under § 4313(a)(3) because it "came with the same pay and benefits that the Plaintiff received as a pilot, plus equal status within the organization," thus satisfying § 4313(a)(3). *Id.* at *1.

Harwood has also twice sought awards for attorneys' fees and costs in the district court. On September 4, 2018, Harwood sought $149,131.55 in fees and costs. Mot. for Att'y Fees, *Harwood*, 2018 WL 8803959 (No. 1:17-cv-0484), ECF No. 70. And on September 20, 2018, he sought an additional $10,845.80 to account for the filing of a reply brief. Pl.'s Suppl. Fee Pet., *Harwood*, 2018 WL 8803959 (No. 1:17-cv-0484), ECF No. 86. The district court originally awarded $68,648.83 in fees to Harwood and $4,349.85 in costs. J.A. 823-24. After the remand from this Court, it ordered a briefing schedule on a supplemental petition for fees. Harwood filed a supplemental petition for fees and costs on November 9, 2020, seeking an additional award in the amount of $48,509.89. J.A. 838, 846. He then sought an additional $1,654.80 in fees to account for the filing of a reply brief. J.A. 914, 917. The district court ultimately awarded Harwood an additional $13,352.58 in fees and an additional $5,820.09 in costs. J.A. 927. But it reduced its previous award of attorneys' fees and costs from $68,648.83 to $63,745.34. J.A. 927. These determinations led to combined fees and costs award of $87,267.86. J.A. 927.

Harwood now challenges the district court's determination as to the equivalence of the position as the basis for its reassessed damages as well as the methods by which the district court calculated the new costs and fees award. We consider each in turn.

II.

A.

We review the district court's findings of fact underlying the damages award for clear error. *U.S. Equal Emp. Opportunity Comm'n v. Consol. Energy, Inc.*, 860 F.3d 131, 148-49 (4th Cir. 2017).

In our prior remand, we instructed the district court to recalculate damages, withholding those awarded for the period between Harwood's rejection of the offered position and ultimate acceptance "unless the offered position was not equivalent under [USERRA]." *Harwood*, 963 F.3d at 420.

Thus, the sole factual determination before the district court on remand was whether the position American Airlines offered to Harwood on October 22 was equivalent to his escalator position as a line pilot. Section 4313(a)(3)(A) instructs that the alternative position must be one the individual is "qualified to perform" and which is "equivalent in seniority, status, and pay." Evaluating those equivalencies involves determinations of fact. To make such a determination, courts consider "the totality of the circumstances." *Crawford v. Dep't of the Army*, 718 F.3d 1361, 1366 (Fed. Cir. 2013) (citation omitted). We review it for clear error.

As with any test that considers the totality of the circumstances, certain factors cannot be singled out as dispositive without first weighing all the other potentially competing factors. *Id.* In order to determine the appropriate reemployment position, "[t]he employer must determine the seniority rights, status, and rate of pay as though the

8

employee had been continuously employed during the period of service." 20 C.F.R. § 1002.193(a).   Additionally, "[t]he seniority rights, status, and pay of an employment position include those established (or changed) by a collective bargaining agreement, employer policy, or employment practice[,]" and "the employee's status in the reemployment position could include opportunities for advancement, general working conditions, job location, shift assignment, rank, responsibility, and geographical location." *Id.*

Harwood contends that the legislative history of USERRA supports his argument that "[a] reinstatement offer in another city is particularly violative of like status, as would be reinstatement in a position which does not allow for the use of specialized skills in a unique situation."   H.R. Rep. No. 103-65, pt. 1, at 31 (1993), *as reprinted in* 1994 U.S.C.C.A.N. 2449, 2464.   However, implementing regulations promulgated by the Department of Labor (DOL) specify that "[t]he reemployment position may involve transfer to another . . . location . . . ."   20 C.F.R. § 1002.194.   Further, the district court's reasoning, citing this DOL guidance, indicates that it did in fact take the location change and Harwood's indicated willingness to accept a position in Dallas into account as part of a totality of the circumstances analysis. *See Harwood*, 2020 WL 6580394, at *1.

True, the district court appears to count our mention of the offered Flight Operations job as an "appropriate position" as definitive rather than a determination we explicitly instructed the district court to find for itself. *Id.*  In its analysis, however, the district court does not rest on that seeming misunderstanding in light of our remand instructions. It goes on to state that the Flight Operations position "came with the same pay and benefits that

the Plaintiff received as a pilot, plus equal status within the organization[,]" all of which is borne out in the record. *Id.* Harwood argues that American Airlines' offer of reemployment was vague, in that it only stated that the position was appropriate for his status and would be compensated at the same rate as he would be as a pilot but failed to outline specific benefits such as those that were negotiated under the collective bargaining agreement. But USERRA does not have a specificity requirement and, more notably, neither Harwood nor his counsel sought further specifics about the position prior to rejecting it. We will not now hold American Airlines accountable for their silence.

Harwood's other arguments are unpersuasive as they do not pertain to the narrow instructions we issued to the district court and, further, read in obligations well beyond those imposed by the language of USERRA itself. He argues that American Airlines' failure to help accommodate and place him in the escalator pilot position is a basis for remand. But the previous deliberations in this case dispensed with that issue. *See Harwood v. Am. Airlines Inc.*, No. 1:17-cv-00484-GBL-JFA, 2017 WL 11318161, at *8-9 (E.D. Va. Aug. 9, 2017); *Harwood*, 963 F.3d at 417. On remand, we instructed the district court to focus solely on whether American Airlines placed Harwood in an equivalent position per § 4313(a)(3). The equivalence of the position, as it bore on the determination of damages, was the focus of the district court's deliberations on remand and constitutes the limits of this appeal.

In short, Harwood's arguments fail to convince us of the requisite clear error in the district court's determination as to the equivalence of the position American Airlines offered on October 22. The district court's determination stands.

10

B.

Harwood bases his challenge to the amount in damages award solely on the equivalence arguments addressed above. We review a damages award from a lower court under an abuse of discretion standard. *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1279 (4th Cir. 1994).

Having found that the district court did not clearly err in its determination that the position offered to Harwood on October 22 was equivalent under the terms of § 4313(a)(3)(A) and finding no other abuse of discretion in its calculation of the appropriate amount of damages—which reflect the amount due to Harwood for the period from September 1 through October 22—we affirm the district court's damages award.

C.

Finally, Harwood challenges the district court's award of attorneys' fees and costs. Our abuse-of-discretion review of the district court's fees determination is "extremely deferential." *Grissom v. Mills Corp.*, 549 F.3d 313, 322 (4th Cir. 2008). "[B]ecause a district court has close and intimate knowledge of the efforts expended and the value of the services rendered, the fee award must not be overturned unless it is clearly wrong." *Plyler v. Evatt*, 902 F.2d 273, 278 (4th Cir. 1990) (cleaned up). The district court did not abuse its discretion in applying the various rates and reductions to calculate attorneys' fees and costs awarded to Harwood.

11

In its initial fee determination, the district court found that a reasonable rate for principals and of counsel was $450 per hour, which was a reduction from the amount Harwood requested. According to the court, it was a justified reduction, both because this case was not particularly "complex" and because there were "many instances in the billing records where principals billed for work that could have been done by a law clerk or a paralegal." J.A. 817. Noting a lack of adequate documentation, the court then applied deductions for the following categories of impermissible billing: clerical work, excessive pre-suit billing, excessive hours spent on the fee petition, travel time, and lack of success. J.A. 818-23.

The district court's total award of $77,097.92 in attorneys' fees based on these calculations does not constitute an abuse of discretion. The court employed the proper methodology: It calculated the lodestar by multiplying a reasonable hourly rate by the number of hours reasonably expended, appropriately considering the relevant factors as set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and as noted above. J.A. 815-24, 918-26. Then it reduced the fee award for lack of success and impermissible billing. J.A. 815-24, 918-26; *see also McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (reductions for unsuccessful claims); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (same).

Harwood's primary argument in opposition to this fee analysis is essentially that district courts should not be permitted to make across-the-board reductions and should instead make targeted reductions to directly address specific issues. While such a targeted approach, as a matter of policy, might provide a more nuanced fee award, case law places

12

no such burden on the trial court. *See, e.g.*, *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may . . . use estimates in calculating and allocating an attorney's time."); *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983) (affirming a district court's discretion to "identify specific hours that should be eliminated, or . . . simply reduce the award to account for limited success"); *Doe v. Kidd*, 656 F. App'x 643, 655 (4th Cir. 2016) (affirming a "twenty-five percent reduction . . . for excessiveness"); *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995) (affirming the district court's twenty percent across-the-board reduction where the plaintiff's counsel devoted excessive time to seeking attorney's fees and failed to make reasonable settlement offers).

Harwood's remaining arguments take issue with the particulars of the district court's awards, but these arguments fall within the heartland of district courts' broad discretion and cannot prevail. *See Trimper*, 58 F.3d at 74. Harwood contends that the district court should have increased his counsel's hourly rate to account for cost-of-living increases and inflation. But he never requested such an increase from the district court. *See* J.A. 848-60. In his second fee petition, he specifically requested the hourly rates the court awarded on his first fee petition. *See* J.A. 890-900. Although the higher amount he initially requested was within the applicable matrix for the Vienna, Virginia metro area, district courts are not required to follow any particular fee matrix. *See Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009) (noting that the relevant matrix is a "useful starting point to determine fees, not a required referent" (citation omitted)). The district court appropriately assessed the complexity of the case, cases in

13

which comparable rates were awarded, and declarations from local employment law attorneys.  J.A. 816-17.  Harwood identifies no error of law or clear factual error.

Harwood's argument that the court should reconceptualize what constitutes clerical time in light of modern law practice likewise falls short.  As the district court rightly noted, pre-suit time is recoverable when it was "reasonably expended on the litigation."  J.A. 819 (quoting *Webb v. Cnty. Bd. of Educ. of Dyer Cnty.*, 471 U.S. 234, 242 (1985)).  Compensable activities may include "attorney-client interviews, investigation of the facts of the case, research on the viability of potential legal claims, drafting of the complaint and accompanying documents, and preparation for dealing with expected preliminary motions and discovery requests."  J.A. 819 (quoting *Page v. Va. State Bd. of Elections*, No. 3:13-cv-678, 2015 WL 11256614, at *11 (E.D. Va. Mar. 11, 2015)).  But "it is difficult to treat time spent years before the complaint was filed as having been 'expended on the litigation[.]'" *Webb*, 471 U.S. at 242.  The district court determined that the pre-suit entries, describing "case status meetings, correspondence, and settlement attempts," were not "the sorts of legitimate pre-suit actions described in the caselaw."  J.A. 820.  Harwood argues that the court's conclusion constitutes dangerous precedent by discouraging pre-suit investigation, but the district court based its reduction on non-investigative tasks.  J.A. 819-20.  While again, as Harwood argues, it may make policy sense to encourage pre-suit settlement negotiations by including them in calculations for attorneys' fees, the district court's decision not to do so does not amount to an abuse of its broad discretion.

Harwood's other arguments similarly fail.  He does not present any evidence of the customary practice in Northern Virginia for full or partially reduced rates for travel time.

14

And we will not second-guess the district court's decision, which falls within the band of reasonable outcomes. Further, he does not ascribe particularized error to the district court's reduction of the overall fee for the excessiveness of time spent on preparing the fee petition, but yet again makes a policy argument about the complexities of modern law practice that cannot succeed under the deferential standard we apply here.

Ultimately, Harwood fails to demonstrate that any aspect of the district court's fee award determination constitutes an abuse of its broad discretion.

III.

For the foregoing reasons, we affirm the district court's award of $28,771.41 in damages and $87,267.86 for fees and costs. As long established, district courts are best positioned to make factual determinations concerning warranted damages and the need for costs and fees. In the case before us, we find no reversible error.

Accordingly, the judgment is

*AFFIRMED*.

15